FITCH *v.* BOARD OF AUDITORS OF CLAIMS AGAINST MAN-
ITOU COUNTY.

KANE *v.* SAME.

1. CERTIORARI—PARTIES—TOWNSHIPS.

Under Joint Resolution No. 4 of the legislature of 1901 (Pub.
Acts 1901, p. 382), providing for a board to audit claims
against the disorganized county of Manitou, the territory of
which had been divided between C. and L. counties, which
claims, when allowed, were chargeable against the territory
of the disorganized county, townships of the enlarged coun-
ties, although consisting of such territory in part only, were
proper petitioners for a writ of *certiorari* to review the action
of the circuit court in awarding *mandamus* against such
board to compel the allowance of claims.

2. APPEAL—ERROR IN PRINTED RECORD.

In case of a discrepancy between the original and the printed
record on appeal, the former will control.

3. SAME—COSTS.

An error in the printed record on appeal, justifying a motion
to dismiss by the appellee, will impose costs of the motion on
appellant.

4. SAME — CONSTITUTIONALITY   OF   STATUTE — OBJECTIONS   NOT
URGED BELOW.

Where the constitutionality of a law is attacked, objections and
arguments against its validity may be urged on appeal,
though not advanced in the court below.

5. CONSTITUTIONAL LAW—AUDITING CLAIMS—JUDICIAL POWER.

Joint Resolution No. 4 of the legislature of 1901, creating a
board to audit claims against the disorganized county of '
Manitou, with power to apportion the amount allowed against
the territory formerly comprising the same, conferred judicial
power on such board, in violation of article 6, § 1, of the Con-
stitution, vesting the judicial power in the courts.

6. SAME—RIGHT OF REVIEW.

The fact that, by the terms of the resolution, the action of the
board was reviewable by *mandamus,* did not save its validity.

7. SAME—LEGISLATIVE POWER TO ALLOW CLAIMS.

Nor could it be sustained on the ground that it is a legitimate
exercise of legislative power to determine what debts a munic-
ipality shall pay, and to compel their payment; as the Con-
stitution, by article 4, § 31, prohibits the legislature from
auditing accounts.

8. SAME—CASES DISTINGUISHED.

Neither the fact that the courts have upheld the exercise of
judicial power by circuit court commissioners and by com-
missioners on claims against the estates of decedents, nor the
fact that claims are habitually audited by boards of super-
visors and county auditors, as well as by various officers of
townships, cities, and villages, is controlling of the present
question.

*Certiorari* to Charlevoix; Mayne, J.  Submitted Jan-
uary 6, 1903.  (Docket Nos. 3, 4.)  Decided May 12, 1903.

Separate *mandamus* proceedings by Dwight H. Fitch
and Arthur L. Fitch, copartners as Fitch & Fitch, and by
Robert W. Kane, to compel the board of auditors of
claims against Manitou county to audit and allow certain
claims.    From   orders   granting   the   writs,   the   several
townships interested bring *certiorari.*    Reversed.

*Fitch & Fitch* and *R. W. Kane, in pro. per.*

*A. F. Bunting* and *Thomas Smurthwaite,* for respond-
ent.

CARPENTER, J.  We are asked in these two proceedings, which raise the same issue, to reverse the order of the court below issuing a *mandamus* compelling the respondent to audit certain claims; and the main question involved relates to the constitutionality of a joint resolution passed at the last session of the legislature, and found on pages 382-385, Pub. Acts 1901.

As appears by that resolution, the county of Manitou was disorganized, and part of its territory attached to Charlevoix county and part to Leelanau county, by Act No. 362, Local Acts 1895.  Sections 6 and 9 of that act provided a method for the auditing of the accounts against said county.  Said accounts never were audited.  Therefore this joint resolution created a board of auditors—namely, respondent—consisting of the county clerk and county treasurer of Manitou county at the date of its dissolution, six years before, and the county clerks and county treasurers of Charlevoix and Leelanau counties.  This board was directed to meet at the office of the county clerk of Charlevoix county, June 4, 1901, at 9 a. m., organize by choosing one of their number as chairman and another as clerk, and continue in session, not exceeding 20 days, until they had audited the accounts against said county of Manitou.  The right was given to any person whose claim was rejected, and to any township aggrieved by the allowance of a claim, to resort to *mandamus* proceedings in the circuit court for the county of Charlevoix.  It was made the duty of said board of auditors, after determining the amount of said claims, to apportion the same to the territory formerly comprising Manitou county, now attached to the counties of Charlevoix and Leelanau, "in the same proportion as the relative value" of the parts of said disorganized county attached to each "bear to each other, as fixed and determined by the board of supervisors of Manitou county at its October session in the year eighteen hundred and ninety-four."  It was made the duty of each of said counties to pay its quota of said indebtedness out of funds in its treasury belonging to said disorganized county,

and, in the event of the insufficiency of these funds, to raise the same by taxation on the territory which formerly comprised said disorganized county. The act contained this remarkable provision:

"No such claim shall be disallowed, if otherwise valid, solely for the reason that it is barred by the statute of limitations; the statute of limitations shall not apply to such claims."

Relators, the owners of various alleged claims against the county of Manitou, consisting of county orders, one issued April 15, 1882, three May 11, 1895, and the others on intermediate days, presented them to respondent, who constituted the board of auditors by virtue of the resolution above referred to. These claims were disallowed. They then applied to the circuit court for the county of Charlevoix for a *mandamus.*

Respondent's answer to the order to show cause stated that it refused to allow relators' claims for the reason that they were barred by the statute of limitations; that the joint resolution is unconstitutional and void, in that it seeks to resuscitate claims already dead by the statute of limitations, and in that it destroys vested rights. The court, after listening to the argument of counsel, ordered the *mandamus* to issue.

Before considering the question of the constitutionality of the resolution, it is necessary to dispose of a motion made in each of the cases now under consideration to dismiss the writ of *certiorari* issued by this court. In the first of these cases—namely, that in which Fitch & Fitch are relators—the motion is based upon the ground that the petitioners for said writ of *certiorari* who have not entered a disclaimer are certain townships in the county of Leelanau, each of which is composed in part of territory never forming a part of said county of Manitou. Inasmuch as a part of the taxpayers of each of said townships are liable to be taxed to pay the award in controversy, and this tax is to be collected by said township officers, we think they are proper petitioners, and this motion should therefore be denied.

The motion in the other case—that in which Robert W. Kane is relator—is based upon the assumption that the only petitioners for said writ of *certiorari* who had not entered a disclaimer were certain former townships of the county of Manitou, which had been disorganized, and therefore had no corporate existence when said petition was made. This assumption was justified by the printed record served upon said relator. It was, however, erroneous, as is proved by an examination of the original record. It is quite clear that, notwithstanding the error in printing, this court must be governed by the original record, and therefore must deny the motion. We must, however, hold said petitioners responsible for the error which induced the making of this application, and therefore award costs of this motion to relator, to be paid by such of them as have filed no disclaimer.

Is the joint resolution unconstitutional? Respondent's counsel, both in their brief and argument in this court, contend that the joint resolution is unconstitutional, not only for the reasons urged in the court below, but because, contrary to the provisions of the Constitution, it attempts to confer judicial power upon respondent. Relators contend that this court should consider no other objection to the constitutionality of said joint resolution than was urged in the court below. This contention is based upon the principle, often asserted, that the jurisdiction of this court is limited to a review of such rulings of the circuit court upon questions of law as were distinctly presented and passed upon. See *Chatterton* v. *Parrott*, 46 Mich. 432 (9 N. W. 482). This principle has no application to this case. If this law is unconstitutional in attempting to confer judicial power upon respondent, the court below had no rightful jurisdiction to issue the *mandamus* complained of, and it is difficult to understand how even the consent of the respondent could have so conferred jurisdiction as to make the order complained of effectual for any practical purpose. But respondent did not consent. It objected, and objected, too, on the ground that the law was uncon-

stitutional. In support of this objection certain reasons were advanced, certain arguments urged. It would be a monstrous proposition to say that other reasons may not be advanced in this court, and stronger arguments, if discovered, urged, against the action proposed to be taken. We do not think that this court should decline to hear and be influenced by these arguments, though it may be that if they had been brought to the attention of the trial judge his decision would have been different. It is generally true that the arguments in a case in this court, being made after counsel has had an opportunity to more thoroughly understand his case and examine the authorities, are different and better than they were in the court below. Nevertheless these arguments are not only heard, but they are welcomed. If this constitutional objection now under consideration is well taken, it would not be to relators' advantage to overlook it because it was not urged in the court below. If respondent has no constitutional power to make such a determination of these claims as to be legally binding upon the taxpayers in interest, these taxpayers will be heard to make that claim at some other time, if not now. If these proceedings amount to nothing, and must come to naught, it is wiser and better for every interest concerned that they be arrested at this juncture.

Is this resolution unconstitutional because it confers judicial powers upon respondent? The board of auditors created by this act are authorized to determine the validity and amount of claims presented to them, and to so apportion that amount that the property or taypayers of said disorganized county must pay it. In other words, they not only make a binding determination, which is equivalent to a judgment, but they make an apportionment against the property or taxpayers, without the sanction of a court, which is equivalent to an execution. This board of auditors does, in other words, all that a court can do in the premises. The Constitution of Michigan, article 6, § 1, having vested judicial power in one Supreme Court, in the circuit courts, in probate courts, and in justices of

the peace, clearly does not authorize the legislature to vest judicial power in tribunals of this character. See *Chandler* v. *Nash*, 5 Mich., at page 417; *Risser* v. *Hoyt*, 53 Mich., at page 192 (18 N. W. 615) *et seq.; People* v. *Colleton*, 59 Mich. 573 (26 N. W. 771).

Says the supreme court of Wisconsin in a similar case (see *State* v. *Tappan*, 29 Wis., at page 684 [9 Am. Rep. 622]):

"The power to decide whether the town is under any legal obligation to pay the same or any portion thereof is vested by the constitution exclusively in the courts. The constitutional provision in that behalf, by necessary implication, excludes the legislative or executive branches of the State government from the exercise of judicial powers. These powers must be exercised by the courts alone, and any act which by its terms confers them upon any officer or person or other tribunal is absolutely void.".

Nor can the constitutionality of this resolution be maintained on the ground that the judicial power conferred on the auditors is subject to a review by a court. See *Bissell* v. *Heath*, 98 Mich. 477 (57 N. W. 585). The provision for review in this case is altogether inadequate to preserve the constitutionality of the law. If an aggrieved party, by appealing, had an opportunity to retry his case in a constitutional tribunal, there would be less merit in the complaint that the trial, in the first instance, took place before an unconstitutional tribunal. But the resolution under consideration neither gives nor recognizes any such right of retrial. The only method of review open to an aggrieved party is a proceeding by *mandamus*. The issue in the *mandamus* proceeding is not what judgment should be entered, after judicial consideration of all proper evidence, but it is whether or not the lower tribunal erred in deciding some vital question in the case on the evidence submitted to it. In short, the decisions of the board of auditors, under this act, are no more subject to review than are those of the circuit court. Nor is it by any means clear that the return of this body, acting in a judicial

capacity, will not, under the rules of practice applicable to *mandamus* proceedings, be accepted as true.

Nor do the decisions of this court that circuit court commissioners (see *Streeter* v. *Paton*, 7 Mich. 341), and commissioners on claims against the estates of deceased persons (see *Shurbun* v. *Hooper*, 40 Mich. 503), may exercise judicial powers, affect our conclusion. The constitutionality of the legislation there assailed was maintained because it was older than the Constitution, and its validity had been recognized ever since the Constitution was adopted. It is to be remarked, too, that the party aggrieved by the decision of a circuit court commissioner or commissioners on claims may have—as we have shown he cannot by the resolution under consideration—a retrial, which is a new trial, by appealing to the circuit court.

The fact that boards of supervisors, and in Wayne county the county auditors, audit claims against the county, has no relevancy to the question under discussion. The Constitution (see section 10, art. 10) gives these bodies that authority, and it does not give the board of auditors created by this act, who are not even officers of the parties in interest, power to exercise the authority conferred upon them.

Neither is there any force in the possible suggestion that respondent has the same power to audit these claims as is possessed and exercised by officers of municipalities other than counties. Officers of townships, cities, and villages do audit claims against their municipalities, and thereby make them valid and binding claims. In doing this they exercise no judicial power. They act as agents of the municipalities, their principals. If they reject those claims, they have made no adjudication which prevents the claimant securing redress in the courts. They are the agents, trusted and appointed by the corporation, and empowered to do that act. The members of the respondent board occupy no such relation to the taxpayers in interest. None of them are their officers or agents. Four

of them never were, and two, though they were once, have not been for over six years.

Nor can this objection to the constitutionality of the resolution be answered by saying that it is a legitimate exercise of legislative power to determine what debts a municipality shall pay, and to compel their payment. It is true that decisions may be cited (see *Town of Guilford* v. *Cornell*, 18 Barb. 615; *Town of Guilford* v. *Board of Sup'rs of Chenango Co.*, 13 N. Y. 143; *Sinton* v. *Ashbury*, 41 Cal., at page 530; *Burrough of Dunmore's Appeal*, 52 Pa. St. 374; *Layton* v. *City of New Orleans*, 12 La. Ann. 515; *People* v. *Power*, 25 Ill. 187; *Town of Waterville* v. *Kennebec County Commissioners*, 59 Me. 80) which uphold this power of the legislature. Conceding the soundness of these decisions (and they have been criticised by eminent authority—see Cooley, Const. Lim. [6th Ed.] p. 283, and *State* v. *Tappan*, 29 Wis. 664 [9 Am. Rep. 622], heretofore quoted in this opinion), they have no application to the legislature of this State. Whatever power may be exercised by the legislatures of other States, the Constitution of Michigan, by expressly denying the legislature the power to audit an account (see section 31 of article 4 of the Constitution), prohibits *its* exercising the authority in question. See *People* v. *Supervisor of Onondaga*, 16 Mich. 254; *Bristol* v. *Johnson*, 34 Mich. 123.

It results from this opinion that the order complained of must be reversed, and the proceedings dismissed.

The other Justices concurred.