(50 South. 524.)

No. 17,711.

STATE v. GANTZ.

(Oct. 18, 1909.)

1. OBJECTIONS TO STATUTE—EXEMPTION ILLEGAL.

   The statute is attacked on the ground that it discriminates and does not apply to all electricians. Exception is made, and exemption, without good or reasonable cause.

2. DISCRIMINATION FATAL.

   The objection is fatal. There are persons designated in the statute who have the right, under its terms, to employ electricians without evidence of their qualifications, while others have no such right.

3. DISCRIMINATION IN EMPLOYMENT OF ELECTRICIANS.

   It follows, from the foregoing, that one class of electricians may be employed by persons exempted from the provisions of the act, while others have no such right.

4. CONSTITUTIONAL LAW (§ 87*)—RIGHT TO EARN LIVELIHOOD—CONFLICT WITH CONST. U. S. AMEND. 14.

   If it be of importance to employ a master electrician, it is important that he be employed by the exempted and the nonexempted; and the law which relieves and exempts certain persons from the necessity of employing him is discriminative, and repugnant to the fundamental law, which requires that all persons shall be protected in their right of property, including their right to earn a livelihood.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 156–171; Dec. Dig. § 87.*]

5. CONSTITUTIONAL LAW (§ 230*) — EQUAL PROTECTION OF THE LAWS.

   An exception may be proper for the sake of public safety. The safety intended is not evident under the terms of the statute. On the contrary, it is manifest the greater safety and protection lies in general qualifications, and not in partial exemption.

   Special restrictions or burdens, or special privileges, to persons engaged in the same business, in similar situations, not sustainable. They contravene equal rights, to which all are entitled, and the law cannot be enforced uniformly. Bessette v. People, 193 Ill. 334, 62 N. E. 215, 56 L. R. A. 558.

   There is a denial of the equal protection of the law.

   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 687; Dec. Dig. § 230.*]

6. DECISIONS IN POINT.

   To decide "that some of the class engaged in a domestic trade or commerce shall be deemed criminal if they violate the regulations prescribed by the state, and others of the same class shall not be bound to regard these regulations, is so manifestly a denial of the equal protection of the law that further or extended argument to establish that position would seem to be unnecessary." Connelly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679; Ex parte Hawley (S. D.) 115 N. W. 93, 15 L. R. A. (N. S.) 138.

7. REGULATION OF BUSINESS.

   The business or occupation is universally recognized as useful in the community in which it is conducted. It may be regulated by general statute, applying to all alike.

8. STATUTES (§ 64*)—EFFECT OF PARTIAL IN-VALIDITY—ELIMINATION OF OBJECTIONABLE FEATURE.

    The rest of the statute cannot be made operative equally and impartially under legislative sanction, as the illegal exemption vitiates the whole statute.

    [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66; Dec. Dig. § 64.*]

9. OTHER POINTS NOT DECIDED.

    Other grounds of defense are passed without deciding them, as the case is disposed of on its entirety by the opinion of the court on the first ground presented.

    Provosty, J., dissenting.

    (Syllabus by the Court.)

    Appeal from Criminal District Court, Parish of Orleans; Frank D. Chrétien, Judge.

    George Gantz was charged with performing the work of a master electrician without having obtained a license, and, his demurrer having been sustained, the State appeals. Affirmed.

    Walter Guion, Atty. Gen., St. Clair Adams, Dist. Atty., and Warren Doyle and A. D. Henriques, Jr., Asst. Dist. Attys. (Gilbert L. Dupré, Jr., of counsel), for the State. George B. Smart, for appellee.

    BREAUX, C. J. The charge brought by the state against the defendant is that he undertook to perform the work of a master electrician without having obtained a license from the State Board of Electric Examiners and Supervisors, and that he installed wires and apparatus to convey electric currents to a building in this city, connecting the home of one of the inhabitants of the city with electricity, in violation of Act No. 178, p. 250, of 1908.

    The defendant controverts the grounds of the information filed against him by the district attorney, and invoked in his defense Const. U. S. Amend. 14. He also invokes the Constitution of the state of Louisiana, as guaranteeing to him the right to continue in his occupation as electrician without the necessity of obtaining a license under an as-serted illegal statute, unless such a license be required of all electricians.

    The rule, sought to be laid down in the statute attacked by defendant, as relates to population, applies to every city of 50,000 inhabitants. Act No. 178, supra. It follows that this act applies within its terms only to the city of New Orleans. There is no other city in the state having near that number of inhabitants.

    Under the terms of the statute in question, the qualifications of master electricians, as defined by section 5 of the cited act, are to be examined into and determined by a board of "competent, practical electricians," quoting from the section of the act.

    The board is appointed by the Governor, on the nomination of certain bodies named in the statute. The Governor has the authority to remove any member of the board for incompetency or improper conduct.

    The statute defines that which is meant by "master electricians," as used in the cited act, supra, as including all persons engaged in installing, erecting, or repairing, "or contracting to install, erect, or repair," electric wires or conductors to be used for the transmission of electric currents for light, heat, or power purposes.

    The second and last paragraph of the section provides what shall be the privileges of the master electrician under the provision of the act.

    The privileges are not given to an electrician before he has obtained a license from the board to practice as a master electrician.

    No license issues to any person under the age of 21.

    The applicant must, at the time of filing his application, pay to the Secretary of State the sum of $25 and furnish a bond.

    Section 7 of the act cited repeats that the persons engaged in the business must secure a license, and adds that if they fail in this respect they shall be guilty of a misdemean-

or, and on conviction suffer a fine provided in the act.

The license is renewable each year upon payment of a fee of $10.

All electrical work, except work of minor importance, must be done under the supervision of a "master electrician."

This statute applies to all persons and companies and firms, except the lighting and electric railway companies and the department of police and public buildings of the city of New Orleans, which are exempted from the provisions of this act in so far as the maintenance and installation of their "equipment pole line services" and "meters" are concerned.

The judge of the district court, in a carefully prepared opinion, declared the act unconstitutional on the ground, substantially, that it denied electricians equal privileges.

The exemption is the cause of the trouble, and has given ground for the vigorous attack made by the defendant.

The plaintiff, in argument, in brief, and at bar, in the first place called attention to the restricted character of the exemption, in answer to the position of defendant that it was really a general exemption, in favor of the Electric Railways Company and the department of police and public buildings.

We take it that the pole line service and the matter of meters, mentioned in the statute, includes a large part of the work to be done. There is no necessity of deciding with precision the extent of each—the exempted work and that which is not exempted.

We will mention, however, it is common knowledge that nearly all the accidents are traced to defective line service. The light goes out, or the power fails, or is not properly regulated, nearly always, because of defects in this particular work.

It is scarcely to be presumed that the exemption would have been inserted in the statute, unless it was intended that it should amount to something. It was not inserted as a mere compliment or mild attention to the intended exemptees. Furthermore, we note that the express terms of the act exempt "unimportant work," as made very evident by the following:

"But no work other than minor electric repairs for the maintenance of established plants shall be performed by other than master electrician or under his direction." Act No. 178, supra.

This provision in regard to minor electric repair work already excluded the companies and the police department named, if the work is of no importance. They could have their unimportant work done under that clause; but that was not the only purpose of the exemption. Evidently the work of the intended exemptees, taken as a whole, is important. It is provided for in another section than that provided above, and it is a special exemption, with some meaning and scope. It gives the parties broad privileges.

With reference to the question involved, we will state, before going further in deciding the issues, that there is no other decision in our Reports bearing in any way upon the subject, other than the decision in American Sugar Refining Company v. Louisiana, 179 U. S. 89, 21 Sup. Ct. 43, 45 L. Ed. 102, which affirmed the decision of this court, and that decision is not determinative of the issues in favor of the state in this case.

Upon careful reading of the decision, we found that the act attacked in that case as unconstitutional imposed a license on refiners of sugar. Planters were exempt under the terms of the act. The charge was that the law discriminated in favor of the planters. The court held that there was no unlawful discrimination. The discrimination was founded on a reasonable distinction, as the court held in the cited case.

From earliest days, the farmer and manufacturer have been considered as of different classes.

The court, in the cited case, supra, held that the planter or farmer, who manufactured his own product, was not a manufacturer within the intendment of the law. There is a reasonable distinction between the two; the farmer who plants the crop, and the same farmer who manufactures his crop. He (the farmer) is not a manufacturer in manufacturing his own crop, any more than he is a merchant if he sells his own crop.

There was good reason for exempting the producer. It was in keeping with the experience of ages. To make him liable would not be reasonable, as it would not be reasonable to consider him as a merchant because he sells his products in the market.

The manufacturing or refining of the produce or the sale in the market is an incident of the growth or production of the cane.

The question in the case before us is entirely different. There is no question here of a tax, as in the case last cited above. The right to work cannot be restrained without reason. Constituted authorities have been careful not to sanction unreasonable interference with the right.

Here not only there is no good reason, but there is discrimination.

Why should the companies and the department before named have the right to employ unlicensed, untrained, and even ignorant electricians, if they choose, while the average owner or employer, who does not come within the exemption, must employ only a licensed electrician?

To extend the inquiry further on the same line: Why should an electrician who has no license be able to find employment with these companies and departments, while if another electrician, equally as competent, is called upon by another owner or employer, he must produce a license or lose the opportunity to work and earn a livelihood?

Class legislation, discriminating against some and favoring others, is prohibited. Bar-ber v. Connolly, 113 U. S. 27, 5 Sup. Ct. 357, 28 L. Ed. 923.

And, it follows, equally prohibited is legislation permitting a company or a department of public works to employ one class of artisans, and denying to this class and to others in similar situations to work for other owners and employers.

In general terms, the contention is urged by the state that the discrimination is proper, because it is legislation to carry out a public purpose for the public safety.

This does not satisfactorily appear, is our answer.

The public safety under the act cited is not the better safeguarded. The only purpose of the exemption, from all appearances, is to permit a few to employ less qualified electricians, while others are denied that right, or to permit a few to do as they please, as relates to the qualifications of electricians they employ.

We have weighed the authorities, and have arrived at the conclusion that they sustain defendant's contention of unlawful discrimination.

True, no one should seek to deny to the state the power, by legislation, of protecting the morals and the safety of the public.

Here the legislation does not look to that end. It amounts to a denial of the equal protection of the law.

Our opinion finds support in decision reported in 41 L. R. A. 689, being State v. Gardner, 58 Ohio St. 599, 51 N. E. 136, 65 Am. St. Rep. 785.

Special restrictions and special privileges not to be granted to persons engaged in the same business, under conditions the same, is the tenor of the decision we have annotated.

The case cited is a particularly strong case for defendant.

After reading it, it is not possible to question its correctness with any degree of reason.

We conclude this part of the discussion.

We will now discuss whether the illegal exemption, because illegally discriminative, vitiates the whole statute.

It does evidently. It is a criminal statute, as it defines a crime.

By striking out the exemption as unconstitutional, it leaves subject to criminal prosecution those the Legislature expressly intended should be exempt.

As to them it would be making that a crime which was never intended should be. The exemption renders it impossible to enforce the legislative will.

The statute must be considered as a whole, and the intention as bearing on all its clauses. The character of the intention, its indivisible nature, affects the whole statute. It cannot be enforced.

The statute, we infer, was adopted in accordance with a plan. According to it, there is exemption which is far-reaching.

Our decision extends to and renders inoperative the other parts of the statute, which are intimately and inseparably connected with the plan of legislation.

We will not take up, discuss, and decide the other grounds of defense. The points decided are sufficient to dispose of the case.

These being our views of the grounds considered by us, it only remains for us to decree that the proceedings must fall.

For reasons assigned, the judgment of the district court is affirmed.

PROVOSTY, J., dissents.