Argued May 25; reversed June 22; rehearing denied
September 14, 1937

# STATE *v.* WINEGAR

(69 P. (2d) 1057)

*T. Walter Gillard*, of Portland (Wm. P. Lord, of Portland, on the brief), for appellant.

*J. V. Long*, of Roseburg (M. L. Hallmark and Paul E. Geddes, both of Roseburg, on the brief), for the State.

KELLY, J.   The question here presented is whether the provision of the statute is valid under which defendant was convicted.   Its constitutionality is challenged by defendant.   Defendant also contends that, assuming it to be constitutional, it cannot be lawfully applied to defendant.

The provisions of the statute to which reference is thus made comprise the penultimate subdivision of chapter 58, Oregon Laws, Second Special Session, 1933.

Said chapter 58 is an amendment of section 40-515, Oregon Code 1930, as amended by section 12, chapter 286, Oregon Laws 1933.   It prescribes the respective amounts to be paid for various licenses applicable to the fishing industry and directs that, upon application therefor and the payment of the required fees, such licenses shall be issued to any qualified person or corporation by the master fish warden.   The chapter mentioned provides that "a separate license shall be required" and the subdivision in question imposes a

license fee "for each person using a scow or scows, boat or boats or other water craft, or any truck, automobile, motor vehicle, or any other vehicle in buying, handling, receiving or transporting of food fish, for each scow, boat or other craft, truck, automobile, motor vehicle or any other vehicle, a license of $2.00; provided, however, this subdivision shall not apply to any licensed common carrier, or any *motor* vehicle used to deliver fish by a licensed retail dealer."

Besides urging the contentions stated, defendant propounds the query, "Does not the exaction thus made constitute a tonnage tax which the state cannot levy?"

The case was presented upon the following agreed state of facts:

"1. That the defendant is a citizen of the United States and a resident of the state of Oregon and is the owner of a motor troll boat, 37 ft. in length and of 9 ft. beam, which said boat is duly registered with the Collector Customs at Marshfield, Oregon, and that the registered number is G-294-C, and named the 'Pacific' and that the defendant, at all times mentioned in the complaint had complied with all federal rules and regulations relating to the equipment, navigation and operation of said boat; that he himself held a federal permit or license to operate said boat; that said boat was used by the defendant solely for the purpose of catching salmon by means of trolling appliances outside of the territorial waters of the United States; that after having caught said salmon the defendant did bring said fish into certain harbors of the state of Oregon in said boat and did sell the same to fish buyers and dealers who were duly licensed to purchase said fish and who paid the poundage fee imposed by the state of Oregon thereon.

"2. That in pursuance of his said occupation, on the 20th day of July, 1934, the defendant's trolling boat was docked at Winchester Bay, on the Umpqua

River, in Douglas County, Oregon, and that the defendant navigated his boat to a point outside of the territorial waters of the United States and there caught approximately 222 pounds of food fish, to-wit: Salmon; and thereupon the defendant transported said food fish by means of said boat to the receiving plant of the Columbia River Packer's Association, Inc. located on the tidewater section of the Umpqua river, near Winchester Bay, in Douglas County, State of Oregon, and there sold and delivered said food fish to said Columbia River Packer's Association, Inc. a duly licensed commercial fish dealer of the State of Oregon, and that thereupon the said Columbia River Packer's Association, Inc. paid the poundage fee imposed by the State of Oregon thereon.

"3. That said defendant had not then or theretofore paid to the State of Oregon the sum of $2.00, or any sum for a license to so transport said food fish within the State of Oregon pursuant to Chapter 58, Second Special Session, Laws of the State of Oregon for the year 1933. That said transportation of said food fish by said defendant was wholly upon the navigable waters while within the State of Oregon."

It is claimed on behalf of the defendant that such fish are an import, and consequently the fee prescribed is an impost which the state may not validly levy on foreign commerce. Fish taken in the ocean beyond the territorial limits of the state have been held to be imports when brought into the state: *Gulf Fisheries Co. v. Darrouzet*, 17 F. (2d) 374; *Booth Fisheries et al. v. Case*, 182 Wash. 392 (47 P. (2d) 834).

This question was before us in another case wherein, speaking through Mr. Justice BELT, we said:

"Are such fish imports? There is a dearth of authority on the subject, but we think the word 'import' as used in the Constitution means a shipment of goods or merchandise from a foreign country" * * *.

"The United States Supreme Court, in Sonneborn Bros. v. Cureton, 226 U. S. 506, 43 Sup. Ct. 643, 67 L. Ed. 1095, thus commented upon Woodruff v. Parham, 8 Wall 123, 19 L. Ed. 382:

'The question most considered by the court was whether merchandise exported from one state to another was an export which a state was forbidden to tax by article 1, § 10, par. 3 of the federal Constitution, * * * It was held that it was not, and that the words ''imports and exports'' as there used referred to, and included only merchandise brought in from, or transported to, foreign countries.'

"In the Woodruff case, it was said:

'If we turn for a moment from the consideration of the language of the Constitution to the history of its formation and adoption, we shall find additional reason to conclude that the words imports and imposts were used with exclusive reference to articles imported from foreign countries.' " *State v. Justrom Fish Co.,* 149 Or. 362, 366 (39 P. (2d) 355).

■ That the word ''imports'' as used in this section of the federal constitution has application only to articles imported from foreign countries and has no application to goods transported from one state to another, is held in *State v. City of Sioux Falls,* 60 S. D. 330 (244 N. W. 365), citing *Territory of New Mexico ex rel. McLean & Co. v. Denver Etc. R. Co.,* 203 U. S. 38 (27 S. Ct. 1, 51 L. Ed. 78) ; *State v. Bartles Oil Co.,* 132 Minn. 138 (155 N. W. 1035, L. R. A. 1916D, 193).

■ We think that the subdivision under discussion of said chapter 58, Oregon Laws, Second Special Session, 1933, does not impose a tax or impost upon fish. For this reason it is unnecessary to decide whether the fish transported in defendant's boat were imports or not.

■ As we construe the above quoted subdivision of said chapter 58, it attempts to require the procurement

of a license for the privilege of transporting food fish in any of the vessels or vehicles therein enumerated. It does not purport to levy a tonnage tax: *Wiggins Ferry Co. v. East St. Louis,* 107 U. S. 365 (2 S. Ct. 257, 27 L. Ed. 419) ; *City of New Orleans v. Eclipse Tow-Boat Co.,* 33 La. Ann. 647 (39 Am. Rep. 279).

■ It is elementary that occupations may be classified for the purpose of taxation, regardless of whether the provisions in state constitutions as to the equality and uniformity are applicable, provided the classification is reasonable: Vol. 1, Cooley Taxation (4th Ed.) Sec. 349, p. 76.

"Where a classification is made for an occupation tax, the tax levied must be uniform upon each member of that class. 'Uniformity', as applied to occupation taxes, means simply taxation which acts alike on all persons similarly situated. There must be no discrimination, it seems, without regard to whether the license fee is imposed as an exercise of the police power or as an exercise of the power of taxation." Idem, Section 352, pp. 750, 751.

■ License taxes have been held to be discriminatory when placed upon the sale of goods of any kind by means of any automatic device, being based solely on the mode of sale whether by device or hand: *City of Seattle v. Dencker,* 58 Wash. 501 (108 P. 1086, 28 L. R. A. (N. S.) 446, 137 Am. St. Rep. 1076). So requiring a license from transient merchants occupying a building or other structure is discriminatory because not applicable to such merchants selling in vacant lots, etc.: *State v. Osborne,* 171 Iowa 678 (154 N. W. 294, Ann. Cas. 1917E, 497). So there is discrimination between persons of the same class where a license fee is imposed on those selling goods from any car, warehouse, private house, "or any other place not kept or directly under his control", but not on persons who

make such sales from a place owned or controlled by the seller: *Moffit v. City of Pueblo,* 55 Col. 112 (133 P. 754). A license tax on those selling oil to merchants is invalid as discriminatory where it applies only to those selling oil transported into the city in tank cars or through pipes: *Standard Oil Co. v. City of Fredricksburg,* 105 Va. 82 (52 S. E. 817). A classification of goods by reason of their origin through convict labor in imposing a license for selling goods is unreasonable and void: *People ex rel. Phillips v. Raynes,* 136 N. Y. App. Div. 417 (120 N. Y. Supp. 1053). A license for plumbing cannot be required of individuals generally, except those employed for a firm or corporation which has taken out a license: *Henry v. Campbell,* 133 Ga. 882 (67 S. E. 390, 27 L. R. A. (N. S.) 283, 18 Ann. Cas. 178). Employees of lighting and electric railway companies cannot be exempted from the license fee imposed on persons installing wires or electric apparatus: *State v. Gantz,* 124 La. 535 (50 So. 524, 24 L. R. A. (N. S.) 1072). In licensing owners of office buildings, who rent rooms therein for office purposes, it is illegal to classify for taxation buildings containing more than thirty rooms since the size of the building or the number of offices in it is no good ground for a classification taxing some and exempting others: *City of Los Angeles v. Lankershim,* 160 Cal. 800 (118 P. 215). Exempting from a license tax on bakers those having less than twenty square feet of baking surface denies to other bakers the equal protection of the laws: *Wisconsin Ass'n of Master Bakers v. Weigle,* 167 Wis. 569 (168 N. W. 383). A tax on grocers, where confined to those employing delivery wagons, is invalid: *City of Covington v. Dalheim,* 126 Ky. 26 (102 S. W. 829), Vol. 1, Cooley Taxation (4th Ed.), Sec. 353, pp. 759 et seq.

■ As to the equal protection of the laws clause of the federal constitution, it is beyond question that it applies both to license or business taxes and also to license fees: *Peninsular Casualty Co. v. State,* 68 Fla. 411 (67 So. 165); Vol. Cooley Taxation (4th Ed.), Sec. 348, p. 744.

■ In the case at bar, we are confronted with the question whether it is a reasonable classification to require the payment of a license fee by every person for using a scow, boat or vehicle of any kind in buying, handling, receiving or transporting food fish, except a licensed common carrier and a licensed retail dealer using a motor vehicle. A licensed common carrier could transport many tons of food fish without being subjected to the exaction of a license fee while a householder carrying a can of sardines in his automobile would be required to pay the license fee. We find no ground in reason for such a discrimination.

We are aware that the Supreme Court of the United States has upheld as not discriminatory a statute requiring persons engaged in the business of transporting passengers for hire by motor vehicle in cities of the first class to execute a bond or obtain a liability policy: *Packard v. Banton,* 264 U. S. 140 (44 S. Ct. 257, 68 L. Ed. 596). We think, however, that this case is not controlling in the case at bar.

If a law should be proposed requiring all persons transporting in any kind of craft or vehicle a given class of passengers, for instance, passengers wearing boots, to secure a license and pay a fee before doing so, and by its terms such law should expressly exempt from its provisions carriers for hire and motor vehicles used by licensed dealers in boots, we would have a question analogous to the one in the instant case.

We know that, in safeguarding the use of its highways for intrastate transportation, carriers for hire may be required to obtain certificates of convenience and necessity: *Stanley v. Public Utilities Commission of Maine*, 295 U. S. 76 (55 S. Ct. 628, 79 L. Ed. 1311), and cases there cited. But we cannot construe that principle as one justifying the imposition of a license upon all privately operated vehicles and expressly exempting all common carriers from such imposition.

The licensed retail dealer using a motor vehicle could transport heavy consignments of food fish without paying any license fee while his competitor, also a licensed retail dealer, if making use of a horse drawn or man propelled vehicle, would be required to procure a license. Why the Isaak Waltons of Oregon should be required to secure a license to transport by vehicles the food fish they are fortunate enough to catch, or the good housewives the food fish which they secure in the local market, and at the same time the common carrier and the licensed retail dealers, using motor vehicles, should not be required to do so, finds no reasonable ground of justification.

The distinction attempted to be made between transporting food fish by a licensed dealer using a motor vehicle and transporting by the same means the same article by a purchaser from such a dealer constitutes no proper or natural distinctions, but is arbitrary and in contravention to the constitution: *State ex rel. Luria v. Wagener*, 69 Minn. 206 (72 N. W. 67, 65 Am. St. Rep. 565), and note 38 L. R. A. 677.

We quote from a decision of the Supreme Court of Arkansas:

"It does not palliate the discriminatory effect of the ordinances to say that all persons who use wagons

for the delivery of oil are taxed; for there is no sound reason why those who use wagons for that purpose should be taxed for such use, when those who use the same kind of wagons for other purposes are exempted entirely, or are allowed to escape with a substantially smaller tax. The fact that a discriminating tax applies to all persons of a given class does not render it any the less obnoxious as an unjust discrimination against a class of citizens. There must be some other reason for the classification than the use of the vehicle, unless the use itself affords some substantial grounds for a distinction. Ex parte Deeds, 75 Ark. 542, 87 S. W. 1030; Beckett v. Savannah, 118 Ga. 58, 44 S. E. 819.'' *Waters-Pierce Oil Co. v. City of Hot Springs,* 85 Ark. 509 (109 S. W. 293, 16 L. R. A. (N. S.) 1035).

We also venture to quote from a decision of the supreme judicial court of Maine:

''Ignoring at this time other discriminations sought to be made in the statute, it must be apparent that the discrimination between residents paying a tax of $25 and those paying a tax of $24 upon their stock in trade is purely arbitrary. There is no reason why the resident with the smaller or less valuable stock in trade should be required to pay license fees from which his co-resident engaged in the same business of peddling, but owning a larger or more valuable stock in trade is exempt. There is no reason for drawing the line at $25 rather than at $24 or $26. But the inequality thus created is manifest.

''Whatever the difference in personal powers, attributes, possessions, or conditions, the constitution guarantees to every person an equality of right with all other persons to pursue a lawful occupation under an equal regulation and protection by the law. Inasmuch as by the concluding clause of the fourth section of the statute in question that equality of right and equality of protection are sought to be made unequal, the statute, so far as it requires payment of license fees, must be adjudged to be in conflict with the funda-

mental laws and hence of no force." *State v. Mitchell,* 97 Me. 66 (53 Atl. 887, 94 Am. St. Rep. 481).

The imposition of a license fee upon private carriers by a statutory mandate which expressly exempts common carriers therefrom for transporting exactly the same commodity is not a reasonable exercise of the police power.

We think that the quoted paragraph of the act in question is invalid, because it is discriminatory. The legality of all police regulations depends upon whether they can ultimately pass the judicial test of reasonableness: *Union Fishermen's Co. v. Shoemaker,* 98 Or. 659 (193 P. 476, 194 P. 854) ; *State v. Kincaid,* 133 Or. 95, 106 (285 P. 1105, 288 P. 1015). The subdivision in question does not stand that test. For that reason the judgment of the circuit court is reversed, the cause remanded with directions that the cause be dismissed, and the defendant discharged.