PEOPLE *v.* HALL.

CONSTITUTIONAL LAW—ELECTRICITY—STATUTES—EQUAL PROTECTION
—DELEGATION OF LEGISLATIVE POWER.

> Statute providing for licensing of electricians and electrical con-
> tractors, supervision and inspection of electrical wiring and
> the adoption and minimum standards therefor by an electrical
> administrative board *held,* unconstitutional, because of unrea-
> sonable classification in exempting some installations from
> license requirements, per BUSHNELL, SHARPE, and CHANDLER,
> JJ., because discriminatory as to contractors making relatively
> small installations without apparent justification, per BUTZEL,
> C. J., and because of uncertainty and delegation of legislative
> power to a private association of persons in prescribing of
> minimum standards the breach of which constitutes a penal
> offense, per WIEST, POTTER, NORTH, and MCALLISTER, JJ.
> (Act No. 228, Pub. Acts 1935).

Appeal from Livingston; Collins (Joseph H.), J.
Submitted January 12, 1939. (Docket No. 98, Cal-
endar No. 40,256.) Decided September 5, 1939.

Ralph J. Hall was convicted of violation of Act
No. 228, Pub. Acts 1935, an act providing for the
licensing of electricians and supervision and inspec-
tion of electrical wiring. Reversed without a new
trial.

*Thomas Read,* Attorney General, and *Edmund E.
Shepherd* and *Andrew De Maggio,* Assistants Attor-
ney General, for the people.

*E. Reed Fletcher,* for defendant.

SHARPE, J.   Upon appeal to the circuit court, defendant was convicted of the offense of installing certain electrical fixtures and wiring in a residence without first having obtained the license required by Act No. 228, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 8690–1 *et seq.*, Stat. Ann. § 18.191 *et seq.*).   Defendant admitted the acts of violation, but moved to dismiss the proceedings upon the ground that the above act is unconstitutional under the State and Federal Constitutions for the following reasons:

"a)   That it contains unreasonable classification in that it discriminates between electricians wiring for light, power, and communication companies and those wiring privately and for private employers;

"b)   That it unlawfully delegates legislative power to a purely administrative board;

"c)   That the act contains unlawful delegation of judicial power to an administrative board;

"d)   That the act deprives citizens of liberty and property without due process of law;

"e)   That the act delegates blanket, unrestricted and arbitrary police power to an administrative board;

"f)   That the act is vague and uncertain in its terms and is void for uncertainty;

"g)   That the act requires certain electricians to secure a license in order to wire in the State of Michigan, the requirements for securing such license not being defined to the exclusion of arbitrary and discriminating official action in granting or refusing said licenses;

"h)   That the act embraces more than one object, which are not expressed in the title; and

"i)   That the act is based upon a nonexistent code for wiring and is impossible of definement and interpretation."

The trial court held the act constitutional and convicted and sentenced defendant, from which sentence defendant appeals and contends that the above act

is unconstitutional for the reasons given in the motion to dismiss.

Act No. 228, Pub. Acts 1935, provides:

"SECTION 1. * * * In this act, electrical wiring means and includes: (a) All wiring, generating equipment, of not over ten kilowatt capacity, fixtures, appliances, and appurtenances in connection with the generation, distribution and utilization of electrical energy with a potential of thirty volts or more between conductors, within or on a building, residence or structure, and including service entrance wiring as defined by the national electric code. * * *

"SEC. 5. * * * No person, firm or corporation shall engage in the business of 'electrical contracting,' unless such person, firm or corporation shall have received from the electrical administrative board, or from a municipal board of electrical examiners, an electrical contractor's license and a certificate therefor, nor shall any person, firm or corporation, except a person duly licensed and employed by and working under the direction of a holder of an electrical contractor's license, in any manner undertake to execute any electrical wiring; except that no license shall be required in order to execute any of the following classes of work: * * *

"(b) The installation, alteration or repair of equipment for the operation of signals, or the transmission of intelligence, where such work is an integral part of the communication system owned and operated by a telephone/or telegraph company in rendering its duly authorized service as a telephone and/or telegraph company;

"(c) The installation, alteration or repair of electric wiring for the generation and primary distribution of electric current, or the secondary distribution system up to and including the meters, where such work is an integral part of the system owned and operated by an electric light and power company in rendering its duly authorized service; * * *

"(g)  Any work involved in the operation, maintenance, servicing or repairing of theatrical equipment such as motion picture projectors, stereopticons, public address systems, spot lights, flood lights or other electrical stage equipment; or any work done under the supervision of any licensed operating engineer."

The first objection raised by defendant is that the act contains unreasonable classification in that it discriminates between electricians wiring for light, power and communication companies and those wiring privately and for private employers.  In his brief before this court, defendant adds the further reasons, *i.e.*, that section 1 of the act requires licenses for electricians for wiring only where the load carried by such wiring is "not over ten kilowatt capacity" thereby permitting high tension wiring, where the danger to the public is great, without the electricians doing such work holding a license of any class under this statute and relieving such electricians from obtaining permits for such wiring or paying any fees for the inspection of such wiring installations; and that the act exempts "work involved in the operation, maintenance, servicing or repairing of theatrical equipment."

The people contend that in considering the question of unreasonable classification, only the reasons set forth in defendant's motion to dismiss can be properly considered on this appeal; and that the other reasons not having been presented to the trial court nor passed upon by him cannot be considered here.

We have repeatedly held that where the question of constitutionality of a statute is not presented to the court below, this court will not consider the question on appeal, *Maurer v. Greening Nursery Co.*, 199 Mich. 522; and that in the absence of the question of jurisdiction, the particular provision of the Consti-

tution, which it is claimed the act offends, must be pointed out with reasonable certainty, *McBride* v. *Jacob,* 201 Mich. 525. However, in the case at bar, defendant objected to the constitutionality of the act in the lower court upon the ground of unreasonable classification, and he now only points out further reasons to support his claim. We adopt the language in *Fitch* v. *Manitou County Board of Auditors,* 133 Mich. 178:

"In support of this objection (unconstitutionality of an act) certain reasons were advanced, certain arguments urged. It would be a monstrous proposition to say that other reasons may not be advanced in this court, and stronger arguments, if discovered, urged, against the action proposed to be taken. We do not think that this court should decline to hear and be influenced by these arguments, though it may be that if they had been brought to the attention of the trial judge his decision would have been different. It is generally true that the arguments in a case in this court, being made after counsel has had an opportunity to more thoroughly understand his case and examine the authorities, are different and better than they were in the court below."

The rule adopted in Michigan concerning classification may be found in *Cook Coffee Co.* v. *Flushing,* 267 Mich. 131, 134, where we said:

"The fourteenth amendment of the United States Constitution and article 2, § 1 of the Michigan Constitution of 1908 give the same right of equal protection of the laws. *Naudzius* v. *Lahr,* 253 Mich. 216 (74 A. L. R. 1189, 30 N. C. C. A. 179).

"These constitutional provisions do not mean that there can be no classification in the application of statutes and ordinances, but only that the classification must be based on natural distinguishing characteristics and must bear a reasonable relation to the object of the legislation.

"The standards of classification given in *Lindsley* v. *Natural Carbonic Gas Co.*, 220 U. S. 61, 78 (31 Sup. Ct. 337, Ann. Cas. 1912C, 160), were quoted by this court in *Naudzius* v. *Lahr, supra,* at pp. 222, 223:

"'1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary.'"

In *Kelley* v. *Judge of Recorder's Court of Detroit,* 239 Mich. 204, 214 (53 A. L. R. 273) we said:

"The fundamental rule of classification is that it shall not be arbitrary, must be based on substantial distinctions and be germane to the purpose of the law."

The regulation of electricity is a proper exercise of the police power. See *Berry* v. *City of Chicago,* 320 Ill. 536 (151 N. E. 581).

In *Becker* v. *Pickersgill,* 105 N. J. Law, 51 (143 Atl. 859), the court said:

"The broad assertion of counsel of prosecutor that the ordinance in question deprives the latter of his personal rights and property, finds no support from a plain reading of the ordinance. One of the results of being a member of organized society, under the Constitution and laws, unquestionably is the yielding by the individual of certain absolute rights for the benefit and welfare of the community which he joins. *Salus populi suprema lex.* Such natural and absolute rights which the individual possessed become as to him as a member of civil society, purely relative,

and therefore are subject to regulation. The safety and general welfare of the community require that certain businesses and occupations, because of their dangerous tendencies to injure the safety, health or general welfare of the public, require regulation, and, hence, the requirement of a license to carry on such businesses or occupations, and the imposition of a tax for revenue are nothing more than the proper exercise of the police power to safeguard the community, and such legislation is permissible.''

In *Southeastern Electric Co.* v. *City of Atlanta,* 179 Ga. 514 (176 S. E. 400), the court said:

''The ordinance is also violative of the above constitutional provisions (14th amendment of the Federal Constitution), because imposing on electrical contractors the burden of standing a prescribed examination, while it exempts from such burden persons installing the same equipment for 'public utility companies such as central stations, telephone or telegraph companies or their subsidiaries, who have in their employ or may hereafter employ specialists to install, repair, or maintain equipment located in their own buildings or on their property or service equipment located on customers' property,' as provided in section 33. The ordinance further exempts utility companies by section 46, which provides: 'Before starting work on installation for systems over 600 volts, a completed lay-out in detail shall be submitted to the superintendent of electrical affairs and his approval obtained; provided, however, that this shall not apply to public utility companies, such as central stations, telephone or telegraph companies and their subsidiaries, when installing equipment on their own property or service equipment on the property of their customers;' thereby discriminating against electrical contractors coming within the purview of said ordinance, by denying them the same rights and privileges. * * * The difference between electrical installations in the instances above

mentioned is not so substantial as will support separate classifications for the purpose of imposing said burden on one and exempting the other, for the reason that the work is just as hazardous when done by the exempt class as when done by the subject class."

An examination of the mentioned act discloses that section 1 requires licenses for electricians for wiring only where the load carried by such wiring is "not over ten kilowatt capacity." It necessarily follows that if the load carried by such wiring is over ten kilowatt capacity, no license is required for the installation of such wiring. Nor is a license required in order to execute any of the work mentioned in subsections (b), (c), and (g) of section 5 of the act. The result of the above sections is that of relieving electricians from obtaining a license for certain classes of installation and wiring or for the operation, maintenance, servicing or repairing of theatrical equipment.

It appears to us that there is a necessity for protection to the public in the exempted classes as well as in the classes of work for which a license is required. To justify such a classification there must appear some substantial reason for the regulation of one kind of work not equally applicable to the other. In our opinion the classification here made is not based upon any real or substantial distinction and is not a valid exercise of police power, having for its purpose the prevention of fire and public safety.

Other claims of unconstitutionality of the above act have been presented to us, but under our decision we find it unnecessary to discuss them.

The judgment is reversed, without a new trial. No costs will be allowed.

Bushnell, J., and Chandler, J., concurred with Sharpe, J.

BUTZEL, C. J. Act No. 228, Pub. Acts 1935 (Comp. Laws Supp. 1935, § 8690–1 *et seq.*, Stat. Ann. § 18.191 *et seq.*) is challenged as creating an unconstitutional classification of electric wiring "of not over ten kilowatt capacity." While neither the Constitution of the United States nor of the State of Michigan requires that a statute embrace all possible evils to which it might be applicable, and it will be presumed that it is aimed at the evil where it is most felt (*Kelley* v. *Judge of Recorder's Court of Detroit*, 239 Mich. 204 [53 A. L. R. 273]), this statute classifies without apparent relation to the evil involved. Giving full weight to the presumption of constitutional validity, it is still manifestly unreasonable to impose a strict system of licensing and regulation upon persons installing wiring or generating equipment of less than ten kilowatt capacity, while, at the same time, allowing persons installing equipment carrying a much larger electrical load, and, consequently, a more dangerous one, to be free from the restrictions of the statute. Where size is not a reasonable index to the evil regulated, the law cannot discriminate between the great and the small. See *Engel* v. *O'Malley*, 219 U. S. 128 (31 Sup. Ct. 190). Even if size or electrical capacity can be here regarded as a proper index to the dangers to the public through unskilled and defective construction and installation of electrical equipment, it would seem obvious that the greater evil arising from greater wattage would be the one to be cured. Instead of regulating the more dangerous phase of electrical installation, the legislature has chosen to regulate the less dangerous. The larger contractor, erecting wires carrying thousands of volts, which would immediately electrocute a person with whom they came in contact, or installing equipment which could readily cause devastating fires if defective, is immune from supervision, while the farmer who installs a Delco lighting system to illuminate his house

and barn is compelled to establish his competency to do the work before the inspection authority (section 5, subd. [e]).

We are given no justification or explanation in the record or briefs for this arbitrary and capricious distinction. There is no showing that defective installation is rare where the equipment is over ten kilowatt capacity while dangerously frequent where not over such capacity. The legislature has not exempted the former class to impose on it more stringent regulation. No such regulation of any kind exists. The distinction erected in the statute serves no purpose but to restrict electrical contractors making relatively small installations and to give immunity to those doing work of larger proportions. It is such discrimination that is outlawed by the equal protection clause of the Constitution. See *State* v. *Gantz*, 124 La. 535 (50 South. 524, 24 L. R. A. [N. S.] 1072).

For these reasons I concur in the result reached by Mr. Justice Sharpe.

North, J. (*concurring in reversal*). I can and do concur in Mr. Justice Sharpe's holding that the act here involved (Act No. 228, Pub. Acts 1935 [Comp. Laws Supp. 1935, § 8690–1 *et seq.*, Stat. Ann. § 18.191 *et seq.*]) is unconstitutional, but I am not prepared to agree with the reasons he has assigned in support of his conclusion.

My Brother has detailed the numerous reasons and grounds upon which the constitutionality of Act No. 228 is challenged, and they need not be repeated. He holds the act invalid because he finds in two particulars the classification, upon which depends the necessity of obtaining a license to engage in electric wiring, "is not based upon any real or substantial distinction and is not a valid exercise of police power,

having for its purpose the prevention of fire and public safety.''

The above holding relates in the first instance to section 1 of the act which provides:

''Electrical wiring; definition. In this act, electrical wiring means and includes: (a) All wiring, generating equipment, of not over ten kilowatt capacity, fixtures, appliances, and appurtenances in connection with the generation, distribution and utilization of electrical energy with a potential of thirty volts or more between conductors, within or on a building, residence or structure, including service entrance wiring as defined by the national electric code.''

For reasons stated by him my Brother holds this provision embodies an improper classification. Evidently the legislature which enacted the statute did not think so, and the record before us contains no testimony, neither does it disclose any facts, sustaining a contrary conclusion. For that reason alone we should not, on this record, sustain appellant's claim of unconstitutionality of the act in this particular.

'' 'When a statute is challenged as in conflict with the fundamental law, a clear and substantial conflict must be found to exist to justify its condemnation.' '' *People* v. *Morris,* 80 Mich. 634 (8 L. R. A. 685).

''It is an axiom in American jurisprudence that a statute is not to be pronounced void * * * unless the repugnancy to the Constitution be clear, and the conclusion that it exists inevitable. Every doubt is to be resolved in support of the enactment.'' *Township of Pine Grove* v. *Talcott,* 19 Wall. (86 U. S.) 666, 673.

Further, if we are to take judicial notice of commonly known relevant facts, the following appears incident to reading section 1 of Act No. 228. It has

two requisites as the basis of its classification, and both must be considered in determining whether the classification is one that the legislature was justified in adopting. The first requisite or limitation covers the class of installations commonly used in dwellings, mercantile places, and the like—*i. e.*, "wiring, [and] generating equipment, of not over ten kilowatt capacity." It is common knowledge that wiring and generating equipment of more than ten kilowatt capacity is almost wholly, if not exclusively, used where the installation, control and use are by service or utility companies or by industrial plants or transportation companies. As to such it may be reasonably presumed they have skilled employees and that their own interests necessitate proper safety measures as to installation, maintenance and use. When considered with the second basis or element of classification the foregoing is obviously reasonable in that it affords protection of person and property to the general mass of citizens in their use of electric current. It is fair and reasonable to conclude that this is what the legislature believed there was need of doing.

The second ground of classification in section 1 of the act is its further provision that electric wiring also means and includes "fixtures, appliances, and appurtenances in connection with the generation, distribution and utilization of electrical energy with a potential of thirty volts or more between conductors." This latter provision prevents the unlicensed and unskilled from doing electrical wiring if the voltage between conductors is potentially 30 or more. This provision restricting operations of unlicensed persons to the lower and therefore less dangerous voltage is so obviously a reasonable requisite for public safety that argument is unnecessary. On this unsatisfactory record I am

not prepared to hold the classification in section 1 of the act is unreasonable or arbitrary and the act unconstitutional because thereof.

Nor am I in accord with the holding of Justice SHARPE that, because of the exemptions in subdivisions (b), (c), and (g) of section 5 of the act, class legislation results and the act being discriminatory is invalid. These subdivisions are quoted in my Brother's opinion. In a general way they include electrical wiring used in operating signals, telegraphing, telephoning, in the operations of electric light and electric power companies, and in theatrical equipment such as motion picture projectors and general electrical stage equipment. These excepted phases of electrical wiring or maintenance might logically have been considered by the legislature to be such as are safeguarded by voluntary inspection and use of reasonable safety precautions by those engaged in these phases of electrical work or such uses of electrical current. The legislature might well have concluded that the public was sufficiently safeguarded by the financial responsibility or the high degree of skill possessed by those who engage in the phases of electrical industry or the uses of electric current covered by the subdivisions (b), (c), and (g). So concluding, the legislature may properly have attempted to enact a statute designed to protect the general public in its use of electric current without including those whose business, by its very nature, necessitates its conduct by skilled employees in a manner which in itself affords reasonable protection to the general public.

On this phase of the case my Brother quotes somewhat at length from *Southeastern Electric Co.* v. *City of Atlanta,* 179 Ga. 514 (176 S. E. 400). Examination of the report of this decision discloses that my Brother's quotation is not from the court's de-

cision, but instead it is a part of the court's statement of what was alleged in the plaintiff's petition for an injunction. Besides this quoted portion of the pleadings a large number of other reasons were therein asserted in support of plaintiff's contention that the ordinance in controversy was unconstitutional. Among such other reasons was the following:

"And the ordinance operates unequally upon members of the same class, because it imposes the burden of an examination upon those who do electrical work in new structures, but exempts others of the same class from such examination who do work upon structures where the original connections have been made."

In disposing of the case the Georgia court contented itself by merely providing a "syllabus" opinion, in which it stated the ordinance was discriminatory, that it violated certain portions of the State Constitution and also the due process and equal protection clause of the Federal Constitution. It is quite impossible to determine what phase of the ordinance led the Georgia court to the above conclusion. We do not know whether it was plaintiff's contention quoted in my Brother's opinion, or whether it was some other contention, for example, the one hereinbefore quoted. The latter is not and could not be asserted in the instant case. Because of these circumstances the Georgia decision may or may not be in point, and at least it is not very persuasive of what constitutes proper decision in the instant case.

Another decision which may possibly be considered as having something of a bearing upon this phase of the law will be found in *State* v. *Gantz,* 124 La. 535 (50 South. 524, 24 L. R. A. [N. S.] 1072).

But in this latter case, wherein a statute providing for the licensing of electricians was held to be invalid, the statute was made applicable to only one city in the State; and obviously it was class legislation as between electricians within the city and others residing in other portions of the State. It is true the decision of the Louisiana court was not placed on this ground but, insofar as it is not in harmony with our holding herein on this phase of the case, we should decline to follow it.

In view of the unsatisfactory state of the record presented on this appeal we are not justified in holding Act No. 228, Pub. Acts 1935, unconstitutional on either of the grounds hereinbefore considered. But the ground upon which I can concur with the result reached by Mr. Justice SHARPE is presented by appellant's contention that the act ''is vague and uncertain in its terms and is void for uncertainty,'' and that the requirements of the act are measured and defined by the national electric code.

In section 2, subdivision (b), the act provides:

''The electrical administrative board shall have general supervision of all such electrical wiring and shall, after not less than thirty days' notice and public hearing, prescribe and publish minimum standards therefor, which shall be uniform, *and not less than the minimum standards described by the national electric code.*''

Note also the embodiment of reference to ''the national electric code'' in section 1 above quoted.

In his brief appellant's position is stated as follows:

''Further this appellant urges upon this court that the above section, by prescribing that such rules shall be 'not less than the minimum standards described by the national electric code,' * * * dele-

gates to the National Board of Fire Underwriters, who promulgate the national electric code, the right to prescribe what minimum offenses shall become criminal offenses for the citizens of this State.

"That this is done even though the National Board of Fire Underwriters is not even a body composed of Michigan citizens, but is an organization of business men of the several States which meets to determine these code rules outside the borders of the State of Michigan. And yet the rules established by this foreign body, when adopted by them, instantly become a part of the criminal law of the State of Michigan."

Delegation of legislative power of this character and to this extent cannot be countenanced. It has repeatedly been condemned by this court. *People, ex rel. Bolt,* v. *Riordan,* 73 Mich. 508; *King* v. *Concordia Fire Ins. Co.,* 140 Mich. 258, 268 (6 Ann. Cas. 87); *Chemical Bank & Trust Co.* v. *Oakland Co.,* 264 Mich. 673, 684.

The identical question involved in the instant case came before the supreme court of Kansas in the case of *State* v. *Crawford,* 104 Kan. 141 (177 Pac. 360, 2 A. L. R. 880). The first paragraph of the syllabus of this decision reads:

"The legislature cannot delegate to private individuals and private associations of persons the power to make obligatory rules concerning the management and care of property, nor can it provide that the breach of such rules shall be a penal offense."

The Kansas statute contained the provision, "All electric wiring shall be in accordance with the national electrical code." The trial court, upon defendants' motion, quashed the informations charging them with misdemeanors committed in violation

of the statute, such ruling being on the ground that the quoted provision rendered the statute unconstitutional.  Upon review the supreme court said:

"In considering the correctness of the district court's decision in quashing the informations against the defendants, it is only necessary to recur to the most simple and elementary principles of civil government.  In our commonwealth the power to make, amend, alter and repeal the laws is vested in the legislature.  That body may not abdicate its functions nor delegate its power to any other body, however learned, wise and farsighted the latter may be.  This principle of our Constitution and of our public policy is fundamental.

"Some courts, including our own, have relaxed, or seemingly relaxed, the rigid enforcement of this principle in some instances, by giving countenance to legislation enacted to punish as misdemeanors or otherwise to penalize the breach of rules promulgated or to be promulgated afterwards by some subordinate official body created by the legislature. * * *

"But none of the cases cited has ventured so far afield as to intimate that the legislature might delegate to some unofficial organization of private persons, like the National Fire Protective Association, the power to promulgate rules for the government of the people of this State or for the management of their property, or that the legislature might prescribe punishment for breaches of these rules.  We feel certain that no such judicial doctrine has ever been announced."

In an attempted exercise of police power the legislature of Arizona enacted a statute providing for regulation of electricians and electrical wiring.  The statute empowered municipalities to enact electrical codes, and the statute provided that the regulations

in existing national electrical codes and subsequent additions thereto should be *prima facie* evidence of approved methods, but that the electrical code of a municipality should govern in cases where there was conflict. In *Tucson* v. *Stewart*, 45 Ariz. 36 (40 Pac. [2d] 72, 96 A. L. R. 1492), the Arizona supreme court held the act was invalid for uncertainty and as a delegation of lawmaking power of the municipalities.

Appellant's contention that Act No. 228, Pub. Acts 1935, is unconstitutional, because of uncertainty in its terms and because the legislature attempted an unauthorized delegation of legislative power, must be sustained. This defect appears from the act itself. The provision that minimum standards in this State shall be those prescribed in the national electric code so affects this whole regulatory act that this provision cannot be segregated and still leave a working statute. It was in this provision that the legislature designated the test of what would constitute minimum standards. Without it the act is materially altered and the remaining portion ceases to embody the legislature's intent. Therefore, the act *in toto* must fail.

For the reason above indicated I concur in reversal and without a new trial.

WIEST, POTTER, and McALLISTER, JJ., concurred with NORTH, J.