MEISNER v. DETROIT, BELLE ISLE & WINDSOR FERRY CO.

1. CARRIERS—PASSENGERS—RIGHT TO TRANSPORTATION.

Anyone, no matter what his character is or has been, presenting himself for transportation to a common carrier, is, upon paying his fare, entitled to be transported, provided there is nothing in his condition or conduct when he presents himself to justify his exclusion.

2. THEATERS AND SHOWS—RIGHT TO ADMISSION—LICENSE—REVOCATION.

Theaters, circuses, race tracks, private parks, and the like, are private enterprises, under the control of private parties, and, in the absence of a statute regulating the business, the proprietors of such enterprises may permit or refuse to permit anyone to enter them, or, having given permission, may revoke it.

3. CARRIERS—PASSENGERS—PRIVATE PARKS—RIGHT TO ENTER.

A corporation organized under sections 6646-6659, 2 Comp. Laws, to own and operate ferries on the Detroit river, owning an island in the river which it operates as an amusement park and to which it runs steamers, is not, as to the enterprise named, a common carrier, and it may refuse to carry to such park anyone at its pleasure.[1]

Error to Wayne; Hosmer, J.   Submitted October 15, 1908.   (Docket No. 97.)   Decided November 2, 1908.

Case by Samuel Meisner against the Detroit, Belle Isle & Windsor Ferry Company for refusal to accept plaintiff as a passenger.   There was judgment for plaintiff for the amount paid for a ticket, on a verdict directed by the court, and he brings error.   Affirmed.

*Sloman & Sloman*, for appellant.

*Gray & Gray* (*Elliott G. Stevenson*, of counsel), for appellee.

[1] Ferryman as common carrier, see note to *Rosen* v. *City of Boston* (Mass.), 68 L. R. A. 153.

The defendant is organized under chapter 175, §§ 6646–6659, 2 Comp. Laws. Its articles of association declare its purpose to be "to own and operate ferries on the Detroit river, between the city of Detroit, and the towns of Walkerville, Windsor and Sandwich, Province of Ontario, and Belle Isle, and such other places on the Detroit river and St. Clair river as the business and interests of the public and said corporation may from time to time require." Belle Isle is a public park, comprising an island in the river, and owned by the city. Between the places mentioned it runs ferries, and, as to traffic between those places, is a public common carrier of passengers. The defendant purchased Bois Blanc Island, situated in Canadian waters, near the mouth of the Detroit river, opposite to and about a quarter of a mile from Amherstburg, Canada. It owns the entire island, except a tract reserved for lighthouse purposes and three small cottage lots. Upon its property defendant has erected a café, dance hall, cottage for women, shelters and amusement buildings of various kinds, laid out walks, drives, bicycle paths, baseball and athletic grounds, bathing beaches, etc. Upon these it has expended about $200,000. It owns and runs a boat from Detroit to its park on Bois Blanc Island twice daily. This boat, the steamer Columbia, will carry from 3,000 to 3,500 passengers. A smaller boat, the Papoose, licensed to cary 150 passengers, runs between Amherstburg and Bois Blanc. The island being located in Canadian territory, defendant's boat, the Columbia, is required to stop at Amherstburg, going and coming, to take on a customs inspector. It caters largely to women and children. It owns its own docks used on this route. No liquor is allowed to be sold on the island or on the boats. It provides special policemen to patrol the island, to prevent all conduct and disturbances which would annoy its patrons. Its boat, the Columbia, carries excursions of various societies to the island, selling tickets at a reduced rate to such societies, which make a profit by reselling them at the regular rate. During the season of 1906, there

were about 176 of such special excursions. Plaintiff was refused passage from the city of Detroit to Bois Blanc on two occasions. He had purchased tickets for these trips from societies which gave these excursions. The contracts between the defendant and these organizations contained the following provision:

"The party of the first part reserves the right to refuse to accept tickets sold or furnished to any person whom they believe to be ·possible objectionable passengers. Tickets sold or furnished in violation of this contract will not be accepted."

The tickets also contained the following provision:

"This ticket is sold subject to the agreement between the Detroit, Belle Isle & Windsor Ferry Company and the above organization, and must be exchanged for the excursion ticket at wharf on date of the excursion."

On attempting to pass the gate onto the steamer, plaintiff was refused admission. The reason given on each occasion was that on a former occasion he had engaged in a disturbance upon the boat to the annoyance of passengers and crew. He brought this suit to recover damages for refusal to carry him as a passenger. The action is in tort, alleging a breach of defendant's duty as a common carrier of passengers. The court directed a verdict for the defendant, except as to the price of the ticket which plaintiff had purchased. He was permitted to recover for this amount, with interest.

GRANT, C. J. (*after stating the facts*). Is the defendant, in its business between Detroit and its park on Bois Blanc Island, a public common carrier of passengers, obliged by law to accept any person who offers himself as a passenger? This is the important question in this suit. If it be answered in the affirmative, it follows that no person or corporation can own a private park, private docks, its own means of transportation, and control its pleasure grounds, and means of transportation thereto, without becoming a common carrier, obliged to transport anyone

who presents himself as a passenger.  The sole business in which the defendant is engaged with these two boats is carrying passengers to and from its private pleasure grounds.  It caters to a particular class of people.  It desires to keep out those whom, for reasons of its own, it deems objectionable.  Unless it did this, it would not secure the class of patrons it desires.  If it secures the better class of people, which its managers probably believe would make the enterprise a success, beneficial financially to themselves and attractive to respectable people, it must exclude the rough, boisterous, and rowdyish element from its boats and grounds.  It is not engaged in the general carriage of passengers for business and pleasure.  It invites such persons and parties as it chooses, and upon such terms as it chooses to make, to visit its own grounds, provided, as above stated, with the means of entertainment, amusement, and sport.  It is in all essentials as private an enterprise as that of a theater, a circus, or a race track.

Counsel do not disagree as to the law of common carriers of passengers.  Anyone, no matter what his character is or has been, presenting himself for transportation to such carrier, is, upon paying his fare, entitled to be transported, provided there is nothing in his condition or conduct when he presents himself to justify his exclusion.  This rule does not apply to the owners of theaters, circuses, race tracks, private parks, and the like, unless there be some statute regulating their business, and providing the terms and conditions under which that company's business may be carried on.  It appears to be settled by the authorities that these are private enterprises, under the control of private parties, and that they may license whomsoever they will to enter, and refuse admission to whomsoever they will.  Their own interests prompt fair and just treatment to those whom they invite to their places of pleasure.  The right given to enter such places is a mere license, and after the right to enter is granted, it may be revoked.  So, also, the right to enter

may be refused to anyone. *People* v. *Flynn*, 189 N. Y.
180; *Collister* v. *Hayman*, 183 N. Y. 250 (1 L. R. A.
[N. S.] 1188); *Pearce* v. *Spalding*, 12 Mo. App. 141;
*Purcell* v. *Daly*, 19 Abb. N. C. (N. Y.) 301; *Burton* v.
*Scherpf*, 1 Allen (Mass.), 133; *McCrea* v. *Marsh*, 12
Gray (Mass.), 211; *Horney* v. *Nixon*, 213 Pa. 20 (1 L. R.
A. [N. S.] 1184); *Wood* v. *Leadbitter*, 13 M. & W. 838.

*Wood* v. *Leadbitter*, supra, is very similar in its facts
to this case. It is cited with approval in several of the
above-cited cases. Pleasure grounds of this character
are not necessaries of life, any more than are theaters and
race tracks; and, unless restrained by some provisions of
their charters, their owners can impose any terms of ad-
mission they choose. No such restraints are imposed
upon the defendant in this case. The defendant can exact
an entrance fee at the park, or it can compensate itself by
charging for transportation to it and admit its patrons
otherwise free to the park. The ride upon the boat and
the use of the grounds are part of the same scheme for
pleasure furnished by the defendant to those whom it
may choose to carry. It is perhaps due to the plaintiff to
say that he denies the improper conduct charged against
him, but his rights in no sense depend upon the reason
given for his exclusion.

The judgment is affirmed.

BLAIR, HOOKER, MOORE, and McALVAY, JJ., con-
curred.