---

(No. 14476.—Reversed and remanded.)
CALLAGHAN & Co., Appellant, *vs.* BURDETTE J. SMITH *et al.* Appellees.

*Opinion filed October 21, 1922.*

1. CONSTITUTIONAL LAW—*private publication of statutes is a lawful business.* Publication and distribution of the statutes of the State is a lawful business, in which every individual has the right to engage and with which neither the legislature nor the courts can interfere except in the exercise of the police power.

2. SAME—*injunction is a proper remedy to prevent exercise of special privilege granted by void statute.* Injunction is a proper remedy against the enforcement of an unconstitutional law or to prevent the exercise of a special privilege purporting to be granted by a void statute, where such exercise or enforcement will cause special injury to the complainant for which there is no adequate remedy at law.

3. SAME—*act of 1921 authorizing publication of statutes by private firm is unconstitutional.* The act of June 28, 1921, authorizing the publication of the statutes of the State by a specified firm and providing for the approval of such publication by the Attorney General, is a grant of a special privilege in violation of the constitution.

4. SAME—*constitution requires authorized publication of statutes to be let to lowest bidder.* Section 25 of article 4 of the constitution limits the power of the legislature in regard to the printing, binding and distribution of the statutes and requires that such work shall be let to the lowest responsible bidder at a fixed maximum price.

5. SAME—*constitutional provision for doing a thing in a particular way must be complied with.* Where the constitution provides that a thing shall be done in a particular way there is no authority for doing it in any other way, and the question whether some other way may be more desirable cannot be considered.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

ISHAM, LINCOLN & BEALE, for appellant.

EDWARD J. BRUNDAGE, Attorney General, GEORGE E. DIERSSEN, and LANDON & HOLT, (O. A. HARKER, and ROBERT N. HOLT, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

By an act of the General Assembly entitled "An act to provide for the publication of the general statutes of Illinois together with all amendments," approved June 28, 1921, it is provided:

"Sec. 1. Immediately after the close of the present regular session of the General Assembly there shall be compiled and printed the general statutes of the State of Illinois, including all amendments thereto up to and including all laws and amendments enacted by the Fifty-second General Assembly.

"Sec. 2. The firm of Burdette J. Smith & Co. is hereby authorized to make such compilation and publication, together with a full and complete index of the same at its own expense. Upon the completion of the compilation and printing, it shall be submitted to the Attorney General for his approval.

"Sec. 3. At the time of the submission of the printed compilation to the Attorney General, the publisher shall file with the Secretary of State a bond in the sum of $2500 with sureties approved by the Secretary of State, conditioned for the delivery to the Secretary of State of the number of copies specified in section 4, after the printed compilation has been approved by the Attorney General.

"Sec. 4. When the compiled statutes are approved by the Attorney General, he shall so notify the publisher, and the Secretary of State and it shall thereupon be the duty

of the publisher to furnish to the Secretary of State, without charge or expense to the State, a sufficient number of copies to supply one copy to each elective State officer, the judges of the Supreme Court and each member of the General Assembly."· (Laws of 1921, p. 843.)

Callaghan & Co. filed a bill in the superior court of Cook county against Burdette J. Smith and Edward J. Brundage, Attorney General, for an injunction to restrain Smith from publishing or submitting to the Attorney General a compilation of the statutes of the State of Illinois or from giving bond as provided in the act, and to restrain the Attorney General from approving any such compilation, and for general relief. General demurrers to the bill were sustained, it was dismissed for want of equity, and the complainant has appealed.

The bill makes the following averments: The complainant is an Illinois corporation having its principal place of business in the city of Chicago, is a tax-payer in Cook county, and is, and has been for more than fifteen years, engaged in the business of publishing, printing, selling and distributing law text-books, reports of the decisions of courts, legal digests and encyclopedias, and has invested in said business over one million dollars. In 1913 it published and copyrighted a compilation of the revision of the statutes of Illinois of 1874 and all of the general statutes enacted since such revision and in force on January 1, 1913, together with annotations, known as "Jones & Addington's Illinois Statutes, Annotated." In 1916 the complainant published and copyrighted a book known as "Callaghan's Illinois Laws, Annotated, 1913-1916," embracing all the general acts passed by the legislature of Illinois from January 1, 1913, to June 1, 1916, with annotations, and in 1920 published and copyrighted a volume entitled "Callaghan's Illinois Laws, Annotated, 1917-1920," embracing all the general acts passed by the legislature of Illinois between January 1, 1917, and July 1, 1919, with annotations. The

complainant has expended large sums of money in the prep-
aration and compilation of these works, in preparation of
the plates for their publication and in printing and binding
copies of said works and has in its stock a large number
of printed copies of such works, and the copyrights owned
by the company upon the annotated statutes have been and
still are of great value.   The complainant has sold and is
now selling and distributing the edition of the Revised Stat-
utes of Illinois known as "Hurd's Revised Statutes of 1919"
and editions of Hurd's Revised Statutes of previous years,
and has since the publication of such works sold and dis-
tributed large numbers of them and has derived from such
sales large and substantial profits.   The act of the legis-
lature which has been set out is contrary to the constitu-
tion of the State of Illinois, in that it provides for the
printing, binding and distributing of the laws of the State
and other printing by a private individual without contract
or competition and without the fixing of a maximum price,
contrary to section 25 of article 4 of the constitution,
and it grants to a private individual a special or exclusive
privilege, immunity and franchise, contrary to section 22
of article 4 of the constitution.   Burdette J. Smith, a resi-
dent of Cook county, doing business under the name of
Burdette J. Smith & Co., contemplates and has taken steps
toward the compilation and publication of the statutes of
the State of Illinois pursuant to the terms of the said act
and is engaged upon the preparation and printing of the
text of such compilation.   No publication of the general
statutes of the State of Illinois has been made under the
authority of the legislature since the year 1874, and there
is no complete compilation of the general statutes of Illi-
nois published under State authority except the session
laws printed after the close of each session of the legisla-
ture.   By virtue of the act of the legislature in question
Smith will become the sole publisher and distributor of the
only official edition of the general laws of Illinois published

under the authority of the legislature and with the approval of the Attorney General, and upon the publication of such authorized and official edition of the statutes the copyrights of the complainant upon Jones & Addington's Illinois Statutes, Annotated, and the two editions of Callaghan's Illinois Laws, will be made practically worthless and the plates from which said books are printed will become of little or no value, and the printed copies of said books and of the editions known as Hurd's Revised Statutes, owned by the complainant, will be greatly reduced in value and the sales by the complainant of all of said works will be greatly decreased if they do not cease entirely, and the complainant will be deprived of large profits and will suffer loss and injury in its business impossible to estimate. The preparation of the compilation of the general laws of the State of Illinois is a matter involving great care and skill and the expenditure of large sums of money in editing, compiling and printing the statutes, and no publisher will undertake to publish an edition of the general laws of Illinois which has not the express authority or approval of the legislature, in competition with the edition provided to be published by Smith and officially authorized by the act referred to. Moreover, the duty imposed upon the Attorney General by said bill of approving the compilation to be prepared by Smith will necessitate a great amount of work by the Attorney General or his assistants, and the right or privilege of compiling, printing and distributing the authorized and approved edition of the general laws of the State of Illinois is of great and substantial value and will enable Smith to sell and dispose of many thousands of copies of such publication practically without competition and make large profits therefrom, and if the requirement of the constitution of the State of Illinois with respect to the printing and distribution of the laws of the State had been complied with and the right conferred upon Smith had been offered to competitive bids, the State of Illinois would have derived

from the sale of said right a substantial sum of money and the complainant and other publishers of said books in this State and elsewhere would have bid large sums for the privilege so offered, of which the State of Illinois will be deprived in case the provisions of the aforesaid act are carried out. By the compilation and publication of the laws of the State of Illinois as provided for in the act in question the complainant is deprived of its constitutional right to bid in competition for the privilege of compiling, printing and publishing said statutes, the people of the State of Illinois will be deprived of their right to have published and to purchase an authorized edition of the laws of the State of Illinois at a maximum price to be fixed by the legislature, and the complainant, as a large dealer in and distributor of said books, will be deprived of its right to purchase for sale and distribution to the public an authorized edition of the laws of the State of Illinois at a maximum price to be fixed by the legislature of the State of Illinois. Smith is not a man of any considerable financial responsibility, and on information and belief the complainant states that his total assets do not exceed the sum of $4000, that he is wholly unable to respond financially for the damages which will be caused to the business of the complainant by the publication of the compilation of the statutes under the provisions of the act, and the complainant will therefore suffer irreparable injury for which it has no adequate remedy at law.

The appellees contend that the appellant has not shown such an interest in the subject matter as entitles it to maintain the suit. Appellant bases its right upon two grounds: First, as an individual, who will be subjected to unfair and unjust competition in its business by reason of a special privilege created in favor of its rival; and second, as a tax-payer, who has a right to prevent the expenditure of public money derived from taxation in a manner not authorized by law.

Publication and distribution of the statutes of the State is a lawful business in which every individual has the right to engage and with which neither the legislature nor the courts can interfere except in the exercise of the police power. If the act in question is, in accordance with the theory of the bill, an unconstitutional grant of special privilege to Smith in the conduct of that business which will cause injury to the business of the appellant, the latter's only remedy is an injunction against the use of the privilege. If the exercise of the unlawful privilege will injure the appellant's business, the nature of the injury is such that no argument is necessary to show the inadequacy of any action at law for damages. The remedy by injunction against the enforcement of an unlawful ordinance or an unconstitutional law has often been recognized where a special injury to the complainant has been shown and there is no adequate remedy at law. (*Cicero Lumber Co.* v. *Town of Cicero,* 176 Ill. 9; *Wedesweiler* v. *Brundage,* 297 id. 228; *Merchants Exchange of St. Louis* v. *Knott,* 212 Mo. 616; *Jewett Bros.* v. *Smail,* 20 S. D. 232; *Savage* v. *Jones,* 225 U. S. 501.) If the officers charged with the enforcement of the law may be restrained from enforcing an unconstitutional statute, which the courts regard as no law, the same principle will justify an injunction against the exercise of a special privilege purporting to be granted by an unconstitutional law where its exercise will cause special injury to the appellant for which there is no other adequate remedy. If the appellant can maintain the bill on this ground it is unnecessary to determine its right to maintain it as a tax-payer.

The appellees contend that the bill not only fails to show any special injury to the appellant but that it shows no legal right of appellant is involved and so shows no legal injury; that the statute does not give Burdette J. Smith any right in regard to the publication of the statutes which he did not have before, and that the appellant can apply to

the legislature to pass an act authorizing the appellant to publish the statutes, and so can any other publisher. They do not say that the legislature will pass such a statute, and the implication is inconsistent with the previous statement that the statute confers no right. The statute, if valid, confers on Smith the special privilege of publishing a compilation of the statutes of Illinois approved by the Attorney General under the authority of the legislature. If the legislature should hereafter confer the same right, by name, on another person or many others, the right to make such publication would still be a special privilege conferred on each person so named. The bill alleges that the preparation and publication of a compilation of the laws of Illinois require a large expenditure of money; that no publisher would publish such a compilation not having the express authority of the legislature, in competition with Smith's official authorized edition; that the privilege granted to Smith will enable him to sell many thousand copies of his publication practically without competition, and thereby the sales of the complainant will be greatly decreased, the value of its copyrights, the plates from which its books are printed, and the printed books themselves which it has on hand, will be greatly reduced and it will lose large profits and suffer great loss and injury to its business.

Counsel for the appellees say that it is true that economic loss will probably result to the appellant, but that such loss is not a legal injury, because they say that "injury," in a legal sense, means damage resulting from the violation of a legal right. If the appellant's claim that the statute granted to Smith an unconstitutional privilege is correct, then the exercise of that privilege will be a violation of the legal right of the appellant to conduct its business free from the unlawful competition of a rival exercising an unconstitutional special privilege in that business. The appellees' answer as to the special privilege is a denial of its existence. They repeat that the act confers no right on

Smith which he did not enjoy before, and assert that it simply recites an authority in him to do an act which he had a right to do without reference to the statute. What, then, was the reason for the statute? The appellees suggest none, and, of course, if the act was of the character they state, none can be imagined. The legislature must have passed it without motive and probably without Smith's knowledge. No such view can be accepted. Smith had a right, before the act was passed, to compile and print the statutes as a private enterprise but not as purporting to be printed under the authority of the State. The act gave him the latter right, which no other publisher in the State possesses,—the right to publish the only compilation of statutes of the State which, as provided in section 10 of chapter 51 of the Revised Statutes, shall be evidence in all courts and places in this State of the acts therein contained, and thereby attempted to grant a special privilege to him, in violation of the constitutional limitation.

The act also violates section 25 of article 4 of the constitution, which is as follows: "The General Assembly shall provide, by law, that the fuel, stationery and printing paper furnished for the use of the State; the copying, printing, binding and distributing the laws and journals, and all other printing ordered by the General Assembly, shall be let by contract to the lowest responsible bidder; but the General Assembly shall fix a maximum price; and no member thereof, or other officer of the State, shall be interested, directly or indirectly, in such contract. But all such contracts shall be subject to the approval of the Governor, and if he disapproves the same there shall be a re-letting of the contract, in such manner as shall be prescribed by law." This section declares the policy of the State, and limits the power of the legislature, among other things, in regard to the printing, binding and distribution of the statutes. These things can be done only by contract let to the lowest responsible bidder. This necessarily implies, as was said in

*Dement* v. *Rokker,* 126 Ill. 174, equal opportunity and freedom to all whose interests or inclinations might impel them to compete at the bidding, and no one can be regarded as the lowest bidder where others who would otherwise have bid are by an arbitrary arrangement to prevent competition kept from bidding. There can be no pretense that the publication of the statutes authorized by this act was let to the lowest responsible bidder or that there was any effort to comply with this provision of the constitution. If the result of the act was a contract for printing, binding and distributing the laws, there can be no question that it is unconstitutional both because it did not provide for letting the contract to the lowest responsible bidder and because the General Assembly fixed no maximum price.

The first section of the act directed that the general statutes of the State, including all amendments, should be compiled and printed immediately after the adjournment of the regular session of the General Assembly. The second authorized Smith to make such compilation and publication, and directed that the compilation be submitted to the Attorney General for his approval. The third required the filing of a bond for $2500 with the Secretary of State conditioned for the delivery of the number of copies specified in section 4 after the printed compilation had been approved by the Attorney General, and section 4 provided that when the compiled statutes were approved by the Attorney General he should notify the publisher and the Secretary of State, and it should thereupon be the duty of the publisher to furnish the Secretary of State, without expense to the State, the number of copies provided in that section, for the use of certain officers. When the publisher shall submit his compilation to the Attorney General for approval and file the required bond with the Secretary of State, even if there had previously been no contract, by such act a contract is completed for the publication of the statutes and the delivery of the number of copies mentioned to the

Secretary of State. The publisher named in the statute is bound to publish his compilation and deliver the number of copies specified to the State for the benefit of the State; but he is not the lowest responsible bidder, no maximum price has been fixed by the General Assembly for the publication, but a contract has been made for the publication of the laws without any reference to the constitutional limitations in that regard.

It is argued that the contract made is more beneficial to the State than if the publication had been let in the manner required by the constitution. This argument, however, can be given no weight. When the constitution provides that a thing shall be done in a particular way there is no authority for doing it in any other way, and the question whether some other way may be more desirable cannot be considered. The act provides for something more than the publication of the laws. It provides also for the purchase of a certain number of copies by the State, and it is because these two elements are combined in the contract that it is argued the provision of the constitution in regard to the publication of the laws may be disregarded. The constitutional provision cannot be evaded by any such device by including with the contract for the publication a contract for something else. The constitution authorizes only one method by which the State may contract for the publication of its laws, and that requires a letting to the lowest responsible bidder and the fixing of a maximum price. The act in question disregards both these requirements.

The decree of the superior court will be reversed and the cause remanded, with directions to overrule the demurrer.    *Reversed and remanded, with directions.*