## PEOPLE v TRABUCCHI

Docket No. 84839. Submitted April 16, 1986, at Lansing. Decided June
16, 1987. Leave to appeal applied for.

Ronald Trabucchi was charged with violation of the ticket scalp-
ing statute. The district court dismissed the action holding the
statute unconstitutional on the ground that it impermissibly
delegates legislative authority to private individuals. The peo-
ple appealed to the Oakland Circuit Court, which affirmed,
Richard D. Kuhn, J. The people appeal by leave granted.

The Court of Appeals held:

1. The ticket scalping statute is reasonably related to the
accomplishment of its legislative purpose of protecting the
public from the predatory practices of ticket brokers who
charge greatly inflated prices for tickets which would otherwise
be available to the public at regular box office prices. The
subject of the ticket scalping act clearly falls within an area of
permissible legislation.

2. The ticket scalping statute does not impermissibly delegate
legislative authority to private individuals and, thus, is not
unconstitutional.

The order of the circuit court affirming the district court's
order of dismissal is vacated and the case is remanded to the
district court for trial.

J. P. SWALLOW, J., dissented. It is his belief that the ticket
scalping statute allows an unconstitutional delegation of legis-
lative power to private individuals. The statute delegates legis-
lative authority without prescribing sufficient standards and
fails to prevent those abuses normally attendant to ticket
resale. Absent a purpose to cause abatement of those abuses,
the statute cannot be supported as a legitimate exercise of
police power by the Legislature. He would affirm.

1. THEATERS AND SHOWS — TICKET SCALPING ACT — CONSTITUTIONAL
LAW.

The subject matter of the ticket scalping statute clearly falls

REFERENCES

Am Jur 2d, Amusements and Exhibitions §§ 4, 5, 7, 18.
Validity of state or local regulation dealing with resale of tickets to
theatrical or sporting events. 81 ALR3d 655.

within an area of permissible legislation; the statute is reasonably related to the accomplishment of its legislative purpose of protecting the public from the predatory practices of ticket brokers who charge greatly inflated prices for tickets which would otherwise be available to the public at regular box office prices (MCL 750.465; MSA 28.720).

2. THEATERS AND SHOWS — TICKET SCALPING ACT — CONSTITUTIONAL LAW.

The ticket scalping statute does not unconstitutionally delegate legislative authority to private individuals or delegate the resolution of a public issue to private persons (MCL 750.465; MSA 28.720).

3. CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE POWER.

It is constitutionally impermissible for the Legislature to delegate to private individuals the power to make laws determining what is permissible conduct and to impose criminal sanctions for noncompliance with such conduct.

4. CONSTITUTIONAL LAW — DELEGATION OF LEGISLATIVE POWER — CONSENT TO MODIFY LEGISLATIVE PROHIBITIONS.

A distinction is made between ordinances or regulations which leave the enactment of the law to individuals and those which are prohibitory in character but which permit the prohibition to be modified with the consent of the persons who are to be most affected by such modification; such consent is generally regarded as being within constitutional limitations if such consent is used for no greater purpose than to waive a restriction which the legislative authority itself has created and in which creation it has made provision for waiver.

5. THEATERS AND SHOWS — CONSTITUTIONAL LAW — RESALE OF TICKETS.

A third party does not have a constitutional right to resell tickets to a public event if the promoter of the event does not wish to sell the tickets to the third party in the first place.

6. THEATERS AND SHOWS — TICKETS TO PUBLIC EVENTS — REVOCATION OF LICENSES.

A ticket to a public event is a license which may be revoked once granted.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief,

Appellate Division, and *Graham K. Crabtree,* Assistant Prosecuting Attorney, for the people.

*Stephen R. Bernstein,* for defendant.

Before: ALLEN, P.J., and MACKENZIE and J. P. SWALLOW,* JJ.

· ALLEN, P.J. In this matter involving the people's appeal by leave granted August 1, 1985, we are asked to determine the constitutionality of the ticket scalping statute, MCL 750.465; MSA 28.720. Both the 52nd District Court, 4th Division, and the Oakland Circuit Court held the statute unconstitutional on grounds that it impermissibly delegates legislative authority to private individuals. We reverse.

The facts are not in dispute. On August 8, 1983, Ronald Trabucchi was charged with one count of ticket scalping, contrary to MCL 750.465(3); MSA 28.720(3). Testimony in a trial by jury in district court indicated that defendant conducted business under the assumed name of Metropolitan Ticket Service. Metropolitan Ticket Service regularly purchased large quantities of tickets from the Detroit Tigers which were paid for with checks signed by defendant and imprinted with the name of Metropolitan Ticket Service. Defendant Trabucchi regularly sponsored bus trips to the stadium, and his name and the name Metropolitan Ticket Service were displayed on the scoreboard with the thanks of the Detroit Tigers for the patron'age. A detective from the Michigan State Police visited defendant's place of business in Troy and purchased several Detroit Tiger baseball tickets for $12 each. This price was $3 over the box office price which was printed on the face of each ticket. William Haase,

* Circuit judge, sitting on the Court of Appeals by assignment.

vice-president of operations for the Detroit Base-
ball Club, testified that defendant did not have
permission to charge the higher rate, but that
another company, the Convenient Ticket Com-
pany, by written agreement with the Detroit Base-
ball Club, was permitted to add sixty-five cents to
the ticket price as a service charge.

Defendant's trial in district court ended in a
hung jury and the court declared a mistrial. Subse-
quent to trial, defendant moved to dismiss the
charge on the ground that the statute was uncon-
stitutional. Following the receipt of briefs and oral
argument, the district court ruled the statute un-
constitutional. In relevant part, the court stated:

> Does it meet the Michigan requirement that an
> area of regulation such as this be in the public
> interest? Does it come within the health, safety,
> morals, general welfare? Is it even an appropriate
> area of legislation?
> And it is this Court's opinion that it does not. I
> agree with Defense Counsel that the Michigan
> Legislature has no business enacting a legislation
> such as this. I don't think it is a proper area for
> regulation, and I also agree that the method used
> is illegal.
> I think on both bases the Defense is entitled to
> have the Statute ruled unconstitutional. In the
> New York case the legislature determined the
> matter of the resale of tickets, it was controlled by
> the state. Michigan didn't choose to do it that way,
> they have left it to the private industry, in this
> case the Detroit Tigers, to decide who is and who
> is not going to violate the law. They can't do that.
> Can't constitutionally do that.

An order dismissing the charge was entered Au-
gust 23, 1984, and the people appealed to the
circuit court where, following submission of briefs,
the matter was taken under advisement by the
court.

On April 22, 1985, the circuit judge issued an opinion and order affirming the district court. In so doing, the court declined to adopt the district court's ruling that ticket scalping is not a proper area for regulation by the Legislature. Instead, the court held that the statute impermissibly delegated legislative authority to private individuals and, therefore, is unconstitutional. The circuit court stated:

> The people contend that § 465 does provide standards or guidelines in the matter [sic, manner] which tickets are resold by those persons who have the written permission of the promoter. This Court fails to see any guidelines in the manner which the Detroit Tigers may except ticket resellers from the statute. The statute fails to set any guidelines on the price which resellers may charge on tickets sold over face value, and the statute fails to set any standards on who the promoter may except from the statute.
>
> In essence, MCL 750.465(3) [MSA 28.720(3)] is devoid of any standards whatsoever in its application of the written exception rule. The legislature has delegated its power to a private business, that can except whomever it pleases from the statute and to charge whatever price it desires. As a result, this statute opens the door for owners and promoters to determine whether the reselling of tickets will be legal or criminal, by discriminatory and arbitrary methods.

The major portion of the briefs of both parties addresses an issue not properly before us, viz.: whether the Legislature has the constitutional authority to regulate ticket scalping. The circuit court expressly declined to affirm that basis of the district court's order. Defendant did not file a cross-motion for leave to appeal from that portion of the district judge's decision and order and, thus,

that issue is not before us. Nevertheless, we address the issue head on. In *Carolene Products Co v Thomson,* 276 Mich 172, 178; 267 NW 608 (1936), our Supreme Court stated:

> The primary determination of public need and character of remedy in the exercise of the police power is in the legislature. Unless the remedy is palpably unreasonable and arbitrary so as needlessly to invade property or personal rights as protected by the Constitution, the act must be sustained.

The Legislature has determined that prohibitions against ticket scalping serve a public purpose. The legislation protects the public from the predatory practices of ticket brokers who charge greatly inflated prices for tickets which would otherwise be available to the public at regular box office prices. The ticket scalping act is reasonably related to the accomplishment of this legislative purpose. In our opinion, the subject of the ticket scalping act clearly falls within an area of permissible legislation.

We next address the single issue properly raised on appeal: Does the ticket scalping statute unconstitutionally delegate legislative authority to private individuals? Defendant argues that it does since "[u]nder the statute, the Detroit Tigers may arbitrarily elect to make [defendant's] acts criminal; but the identical acts of another concern [Convenient Ticket Company] lawful; without having to follow any set of rules." Such an arbitrary delegation of power without any set of standards, defendant argues, is unconstitutional. In support of this claim of unconstitutional delegation of legislative power, two decisions of our Supreme Court are cited as authority. *Senate of the Happy Home Clubs of America v Alpena Co Bd of Super-*

*visors,* 99 Mich 117; 57 NW 1101 (1894), and
*People v Hall,* 290 Mich 15, 29-32; 287 NW 361
(1939).

While we have no quarrel with the rule that it
is constitutionally impermissible for the Legisla-
ture to delegate to private individuals the power to
make laws determining what is permissible con-
duct and to impose criminal sanctions for non-
compliance with such conduct *(Senate of the
Happy Home Clubs, supra; People v Hall, supra),*
that is not what the statute in the instant suit
presribes. MCL 750.465; MSA 28.720 provides:

> (2) A person owning, occupying, managing, or
> controlling a building, room, park or enclosure for
> the sale of tickets for a theatre, circus, athletic
> game, or place of public entertainment or amuse-
> ment, who asks, demands, or receives from a per-
> son for the sale of the ticket to a theatre, circus,
> athletic grounds, or place of public entertainment
> or amusement, a price in excess of the general
> admission advertised or charged for the same priv-
> ilege, or a person, who by himself or herself or his
> or her agent or employee, offers for sale upon a
> public place or thoroughfare, a ticket to a theatre,
> circus, athletic grounds, or place of public enter-
> tainment or amusement, for admission to, or for a
> seat or other privilege in a theatre, circus, athletic
> grounds, or place of public entertainment or
> amusement, at a *price in excess of that demanded
> or received from the general public for the same
> privilege, or in excess of the advertised or printed
> rate,* shall be punished as provided in subsection
> (6), *except if the request, demand, or receipt is
> with the written permission of the owner, lessee,
> operator, or manager of the theatre, circus, ath-
> letic grounds, or place of public entertainment or
> amusement where the event occurs.* If the owner,
> lessee, operator, or manager permits, in writing, a
> charge in excess of the box office price, the permis-
> sion shall be limited to the sales of tickets at

locations other than the box office where the event occurs.

(3) Except as provided in subsections (1) and (2), a person shall not establish an agency or suboffice for the sale of a seat ticket of admission to a theatre, circus, athletic grounds, or place of public entertainment or amusement at a price greater than the sale of a seat ticket at the box office of the theatre, circus, athletic grounds, place of public entertainment or amusement, or in excess of the advertised price of the seat ticket.

Unlike the situations in *Senate of the Happy Home Clubs, Hall,* and similar cases noted below,[1] the above-described statute does not delegate the resolution of a public issue to private persons. The statute in *Senate of the Happy Home Clubs* conferred upon private corporations the power to prescribe directions and regulations for the cure of alcoholism and further provided that, if the person charged observed such directions for a period of ninety days, the person should be acquitted, but in case it should appear that such person had violated the conditions, then trial would proceed. The Supreme Court struck down the statute on grounds that "in effect [it] permits unofficial persons to prescribe rules which shall acquit persons charged with crime." *Id.,* p 120. Similarly, in *Hall, supra,* the question of what was or was not a criminal offense (improper electrical wiring) was left to the determination of a private board.

That is not the situation in the. instant case. Here the statute itself defines the offense, viz.: reselling tickets to a public event for a premium at

---

[1] For recent cases striking down governmental action based upon decisions by private associations, see, *Coffman v State Bd of Examiners in Optometry,* 331 Mich 582; 50 NW2d 322 (1951) (rating of optometric schools by international association in optometry). See also, *Dearborn Fire Fighters Union v Dearborn,* 394 Mich 229, 304-310; 231 NW2d 226 (1975) (delegation to private or non-publicly accountable person).

a place other than the box office if one does not
have the written permission of the owner or pro-
moter. The statute itself defines the offense—if one
does so without written permission from the owner
or promoter, he is subject to prosecution. True, the
promoter is given the choice of giving or not giving
written permission, but *this is a distinction drawn
by the Legislature, not the promoter.* The Legisla-
ture has enacted other penal statutes in which
criminality depends upon whether or not the act
committed is with or without the permission of a
private person. For example, the trespass statute,
MCL 750.546; MSA 28.814, and the entry without
permission statute, MCL 750.115; MSA 28.310. The
flaw in defendant's claim on appeal is that defen-
dant equates written consent to modification of a
statutory prohibition as being tantamount to a
delegation of legislative power. This is not the law.
As stated in *Cady v Detroit,* 289 Mich 499, 515;
286 NW 805 (1939):

> "A distinction is made between ordinances or
> regulations which leave the enactment of the law
> to individuals and ordinances or regulations pro-
> hibitory in character but which permit the prohi-
> bition to be modified with the consent of the
> persons who are to be most affected by such modi-
> fication." 43 CJ p 246.
> *If such consent is used for no greater purpose
> than to waive a restriction which the legislative
> authority itself has created and in which creation
> it has made provision for waiver, such consent is
> generally regarded as being within constitutional
> limitations. City of East Lansing v Smith,* 277
> Mich 495 [269 NW 573 (1936)].

Here, consent was used for no greater purpose
than to waive a restriction which the Legislature
itself created.

We also disagree with defendant's claim that the

statute is unconstitutional because it allows a
private concern to "arbitrarily elect to make [de-
fendant's] acts criminal; but the identical acts of
another concern lawful." It is not the Detroit
Baseball Club which decides whether an applicant
is in violation of the statute. The Detroit Baseball
Club decides only if the applicant will be allowed
to sell tickets at a price higher than the box office
price. If the request is declined, it is the applicant
who determines whether or not he will abide by
that determination and whether he will violate the
statute.

Finally, sound reasons of public policy support
the Legislature's express decision to permit the
resale of tickets for a premium if done with the
consent of the promoter. Prior to 1979, the scalp-
ing statute prohibited all public sales at prices
above face value. Promoters and consumers alike
found the statute too restrictive. As a result, in
1979, an amendment was proposed by Senate Bill
214, which upon passage became 1979 PA 33.
House Legislative Analysis, SB 214, May 31, 1979,
explains the reason for the amendment and the
arguments in favor of and against the bill:

THE APPARENT PROBLEM:
Section 465 of the Michigan Penal Code prohib-
its "scalping." This means it is against the law to
sell a ticket to a public entertainment event at a
price above that at which the ticket is sold at the
box office of the event. While the law has obvious
merits, it prevents the operation in Michigan of
the computerized ticket outlets common elsewhere
which sell tickets to a variety of events at remote
loctions with a surcharge added to the box office
price of the ticket. Many people who are opposed
to common scalping—where a person buys a
highly prized ticket to an event from a legitimate
ticket outlet at the accepted price and then sells it
for a profit—think there are benefits to consumers

and promoters alike to be derived from permitting computerized ticket outlets or similar operations to function in the state. Proponents say it would be easier for people to become aware of and buy tickets to events outside of their geographic area and, in some cases, would make available a wider selection of seats to events where now only certain blocks are available away from the box office. The concept could be particularly advantageous, it is said, to small performing arts organizations and others whose advertising budgets cannot provide them widespread notice.

* * *

ARGUMENTS:

For:

The bill will be of great benefit to consumers and promoters alike in making tickets to entertainment events more widely available. Consumers will have access to more events because they will be able to buy tickets close to home for events going on throughout the state. Further, they will have a wider choice of seats to certain events, such as sporting events, concerts and plays. For promoters, the bill will mean not only that more people from a wider geographic area will be able to buy tickets easily but also that more people will be aware of scheduled events simply by going to the remote ticket outlet and seeing what is being offered. The bill is seen as particularly advantageous to small theatre groups whose budgets might otherwise not permit statewide advertising and distribution of tickets.

Against:

The bill does not require that any additional service be provided as a companion to a surcharge. While the bill aims primarily to encourage or facilitate the use of computerized ticket outlets, it is not restricted to that and, in fact, permits the addition of a surcharge whenever certain persons give their permission, provided the ticket is sold away from the box office. Tickets sold now at department stores and other locations away from

the box office without a surcharge could be sold, under the terms of the bill, with the surcharge added. Further, there is no limit on surcharges.

To preclude abuse of the consent privileges grantable to third parties by the promoter, the statute contains limitations on the manner in which resale is permitted. The permission must be in writing; sale must be made at a location other than the promoter's box office; if a ticket is sold at a location other than the box office at a price in excess of the box office price, the ticket must contain the following printed statement: "This ticket may be purchased at the box office price without the surcharge by purchasing the ticket at the box office where the event is scheduled to occur." Given these restrictions, we are not persuaded that the statute allows private individuals to carte blanche "exempt" persons of their own choosing from the requirements of the law.

Finally, we observe that a third party has no constitutional right to resell tickets if the promoter does not wish to sell the tickets to him in the first place. A ticket to a public event is a license which may be revoked once granted. *Meisner v Detroit, Belle Isle & Windsor Ferry Co,* 154 Mich 545; 118 NW 14 (1908). The freedom of a promoter's choice (to give or not give permission) is not and should not be grounds for declaring the statute unconstitutional.

For the foregoing reasons, we find that Michigan's ticket scalping act does not impermissibly delegate legislative authority to private individuals and, thus, is not unconstitutional. The April 22, 1985, order of the circuit court, affirming an order of dismissal by the district court is vacated and the case is remanded to the district court for trial.

No costs, a question of public interest being involved.

MacKenzie, J., concurred.

J. P. Swallow, J. *(dissenting)*. I respectfully dissent. In my opinion the statutory scheme as contained in the ticket scalping statute, MCL 750.465; MSA 28.720, allows an unconstitutional delegation of legislative power to private individuals.

In *Senate of the Happy Home Clubs of America v Alpena Co Bd of Supervisors,* 99 Mich 117; 57 NW 1101 (1894), the statutory scheme outlawed public drunkenness and provided for criminal punishment unless the offending drunkard successfully completed a "cure" pursuant to rules and regulations promulgated by certain designated facilities, i.e., the Senate of the Happy Homes Clubs.

Similarly, in the present case, the statutory scheme provides that ticket scalping is unlawful and shall be punished as a crime unless the offending ticket scalper secures from the promoter written permission to resell tickets. Under this statutory scheme, the grant of permission to resell tickets may be conditioned upon the promoter's own personal dictates. Thus, in this case, as in *Senate of the Happy Home Clubs,* the Legislature has delegated to private individuals the power to prescribe a procedure by which conduct that is otherwise criminal can be excused and the resultant criminal sanctions avoided.

While language in *People v Turmon,* 417 Mich 638, 649-653; 340 NW2d 620 (1983), suggests that the legislation considered in *Senate of the Happy Home Clubs* may have been constitutional were sufficient standards prescribed, in the present case the statute must likewise fail for the same reason.

For in the present case, as in *Senate of the*

*Happy Home Clubs,* the relevant statute delegates legislative authority without sufficient standards to numerous private parties to establish varying rules and policies as stringent or lenient as they individually choose. For example, the statute fails to set forth standards as to how, who or when a promoter may grant or deny to another party the privilege of reselling their tickets. Further, it fails to provide any standards or guidelines regarding the resale charge for tickets. Thus, promoters are free to make arbitrary decisions under whatever rules they may elect in determining or setting the resale price of tickets.

Finally, it is clear that because of the absence of standards the statute fails to prevent those abuses normally attendant with ticket resale, i.e., denial of equal access to the best seats, resale fraud, the predatory practices of resellers charging exorbitant prices for tickets otherwise available at box office prices, and the dangers and annoyances of loiterers surrounding the place of an event in their attempt to obtain and resell tickets. Absent a purpose to cause abatement of those abuses, the statute cannot be supported as a legitimate exercise of police power by the Legislature. See *Gold v DiCarlo,* 235 F Supp 817 (SD NY, 1964), aff'd 380 US 520; 85 S Ct 1332; 14 L Ed 2d 266 (1965).

I would affirm the circuit court and district court on the grounds that the ticket scalping statute allows for an unconstitutional delegation of legislative power to private individuals.