THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MAX WAISVISZ, Defendant-Appellant.

Fourth District   No. 4—91—0205

Opinion filed December 5, 1991.

668

John W. Moore and Lawrence Wolf Levin, both of Chicago, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

A jury convicted defendant, Max Waisvisz, of the business offense of selling tickets for more than the price printed on the ticket (Ill. Rev. Stat. 1989, ch. 121½, par. 157.32), and he was fined $3,000.

Defendant appeals and makes the following arguments: (1) the statute he was convicted of violating is unconstitutional because (a) it is an impermissible delegation of legislative power, and (b) it violates the provision of the Illinois Constitution concerning special legislation (Ill. Const. 1970, art. IV, §13); (2) he was not proved guilty beyond a reasonable doubt; (3) the circuit court erred in denying his motion for a mistrial which was based on the prosecutor's repeated references to inadmissible evidence; and (4) the circuit court did not properly instruct the jury as to all elements of the charged offense. We disagree and affirm.

Defendant was charged with one count of the offense commonly known as "ticket scalping." It was alleged that on October 5, 1990, defendant sold two tickets to a New Kids on the Block (New Kids) concert, to be held on November 8, 1990, at the University of Illinois

Assembly Hall, for $40 each, rather than $25 each as printed on the tickets.

After receiving a complaint from the manager of the University of Illinois Assembly Hall concerning defendant's sale of tickets to the November 8, 1990, New Kids concert, the University of Illinois police department arranged an undercover purchase of tickets to this concert from defendant. The State's first witness was John Buczkiewicz, a University of Illinois police officer. Buczkiewicz stated that on October 4, 1990, acting on the instructions of a superior, he telephoned defendant and inquired concerning the availability of tickets for the New Kids concert. Buczkiewicz stated defendant told him the tickets cost $40 each for the B section and $30 each for the C section. Buczkiewicz testified defendant agreed to deliver two of the tickets to him on the next day at the Illini Union. Buczkiewicz stated that on the following day, he and defendant exchanged $80 for two B section New Kids concert tickets at the Illini Union. The price printed on each of the tickets was $25.

Also testifying on behalf of the State was Wayne Hecht, the director of the University of Illinois Assembly Hall. Hecht stated the Assembly Hall copromoted the November 8, 1990, New Kids concert with JAM Productions. Under the contract between the Assembly Hall and JAM, JAM was responsible for "bringing the talent, paying the talent, the transportation and the housing." The responsibilities of the Assembly Hall were "to furnish the venue, the building, with all of the utilities and that sort of thing, all of the production, meaning stagehands. We do all the publicity, promotion, advertising, and we have complete control of the ticketing." Hecht testified the Assembly Hall sold tickets to the New Kids concert over the counter, by telephone, and by mail order. The price of the tickets was $25 each, but persons ordering tickets by telephone were required to pay an additional $1 "convenience charge."

Hecht further testified a ticket agency needs the consent of the Assembly Hall before it can sell tickets to Assembly Hall events and impose a service charge on the tickets it sells. Ticketmaster is the only agency which the Assembly Hall ever authorizes to sell tickets on its behalf and impose a service charge on the tickets. The Assembly Hall did not authorize Ticketmaster to sell tickets for the November 8, 1990, New Kids concert. Hecht further stated the Assembly Hall did not give defendant permission to sell tickets to this concert and impose a service charge.

Testifying on his own behalf, defendant basically corroborated Buczkiewicz's testimony regarding his sale of two B section New Kids

concert tickets to Buczkiewicz for $40 each. Defendant further testified that on some occasions, he both buys and sells tickets to events such as Illini basketball games for less than the prices printed on them. Defendant also stated he has a business license issued by the City of Champaign for his ticket-sales business. On cross-examination, defendant stated that when applying for this license, he said his business activity was "Tickets and tours." Also on cross-examination, defendant admitted he did not receive permission from the Assembly Hall to impose a service charge on tickets for the New Kids concert.

Upon this evidence, the jury returned a guilty verdict. This appeal followed.

### I. CONSTITUTIONALITY OF THE "TICKET SCALPING ACT"

Defendant was convicted of violating "An Act in relation to the sale of tickets ***," referred to by the parties as the "Ticket Scalping Act" (Act) (Ill. Rev. Stat. 1989, ch. 121½, pars. 157.31 through 157.35). In pertinent part, this statute reads:

> "It is unlawful for any person, persons, firm or corporation to sell tickets for baseball games, football games, hockey games, theatre entertainments, or any other amusement for a price more than the price printed upon the face of said ticket, and the price of said ticket shall correspond with the same price shown at the box office or the office of original distribution." Ill. Rev. Stat. 1989, ch. 121½, par. 157.32.

> "Nothing contained in this Act was ever intended to prohibit nor shall ever be deemed to prohibit a ticket seller, with consent of the sponsor of such baseball game, football game, hockey game, theatre entertainment or other amusement, from collecting a reasonable service charge, in addition to the printed box office ticket price, from a ticket purchaser in return for service actually rendered." (Ill. Rev. Stat. 1989, ch. 121½, par. 157.35.)

Defendant contends this statute is unconstitutional because (1) it improperly delegates legislative power to sponsors of various events, and (2) it violates the provision of the Illinois Constitution concerning special legislation. Ill. Const. 1970, art. IV, §13.

### A. *Delegation of Legislative Power*

An improper delegation of legislative power consists of an attempted grant of some *traditional* legislative power or authority to an administrative agency or private entity. Generally, courts have found an improper delegation of legislative power to exist where the authority delegated is in effect the power to make law. The question

of improper delegation of legislative power is also at issue in instances where authority is granted to a public body or person to fill vacancies in public office, or when the legislature has authorized an administrative agency or person to execute some legislative power in a prescribed manner. However, a mere grant of authority by the legislature to a private entity to exercise, with the full backing of the law, a right possessed by the entity at common law is not an impermissible grant of legislative power. *Phillips v. Graham* (1981), 86 Ill. 2d 274, 288-89, 427 N.E.2d 550, 556-57.

The *Phillips* court reviewed a statute granting the Illinois Racing Board and its delegees the right to eject or exclude from race tracks individuals "whose conduct or reputation is such that [their] presence *** may, in the opinion of the Board, call into question the honesty and integrity of horse racing or interfere with the orderly conduct of horse racing." (Ill. Rev. Stat. 1979, ch. 8, par. 37—9(e).) The court found this provision was simply a grant of authority by the legislature and not an impermissible delegation of legislative power. Also, at least one other court has held a statute such as the one here at issue, which prohibits the sale of tickets to sporting and entertainment events at a price greater than the amount printed on the ticket, absent permission of the event promoter, is not an impermissible delegation of legislative power. *People v. Trabucchi* (1987), 160 Mich. App. 792, 797-801, 408 N.W.2d 563, 565-66.

■ Defendant argues the pertinent provisions of the Act are unconstitutional because they grant sponsors of sporting and entertainment events the power to determine who will be allowed to engage in the business of ticket brokering, without prescribing standards to guide event sponsors in making this determination. As the *Trabucchi* court observed, however, the distinction which is made in the treatment of those having the permission of the event promoter to resell tickets, and those not having such permission, is drawn by the legislature rather than by the event promoter or sponsor. To the extent the legality of selling tickets for more than the face amount depends on the consent of a private individual, ticket-scalping statutes are no different than statutes such as those which prohibit trespassing. See, *e.g.*, Ill. Rev. Stat. 1989, ch. 38, pars. 21—2, 21—3.

A ticket to a sporting or entertainment event is a license which may be revoked at the will of its issuer. (86 C.J.S. *Theaters & Shows* §35 (1954).) Moreover, an event sponsor may impose restrictions on the transferability of tickets which it issues. (86 C.J.S. *Theaters & Shows* §37 (1954).) The Act merely gives effect to these common law rights. Thus, it is distinguishable from the statutes which were held to

be impermissible delegations of legislative power in the cases relied upon by defendant. There is, for instance, no common law right to exercise an unbridled discretion to determine the content of examinations for journeymen and master plumbers' licenses (see *People v. Brown* (1950), 407 Ill. 565, 581-83, 95 N.E.2d 888, 897-98), nor is there a common law right to determine various automobile races are exempt from noise pollution regulations (see *People v. Pollution Control Board* (1980), 83 Ill. App. 3d 802, 807-09, 404 N.E.2d 352, 356-57). Also, except by means of lawsuits seeking the abatement of nuisances, there is no common law right to exercise control over the use of neighboring real estate. See *Drovers Trust & Savings Bank v. City of Chicago* (1960), 18 Ill. 2d 476, 478-79, 165 N.E.2d 314, 315.

The Act merely gives legislative sanction to a right which the promoters of entertainment and sporting events have always enjoyed at common law. It is not an improper delegation of legislative power.

## B. *Special Legislation*

Section 13 of article IV of the 1970 Illinois Constitution provides: "The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." (Ill. Const. 1970, art. IV, §13.) A special law applies only to a certain segment of the State population, while a local law applies only to a certain geographical area within the State. A general law, by its terms, applies to all who are similarly situated. Essentially, a law violates the proscription against special legislation if there is no rational explanation for not applying the law to all persons or entities in the State, or if there is no rational explanation for not applying a general law to the persons and entities excepted from it. *County of Bureau v. Thompson* (1990), 139 Ill. 2d 323, 345-46, 564 N.E.2d 1170, 1181-82.

■ The apparent purpose of the Act is to prevent "ticket scalpers" from purchasing large blocks of tickets for the best seats at sporting and entertainment events and then reselling those tickets to the public at exorbitant prices. (See 86th Ill. Gen. Assem., House Proceedings, June 25, 1990, at 47-48.) The legislature apparently felt the public welfare would be furthered by having all such tickets freely available for sale to the general public either (1) at face value directly from the event sponsor or (2) at somewhat higher than face value from a ticket distributor acting with permission of the event sponsor. The legislature could reasonably have concluded entities acting with permission of event sponsors would not charge the exorbitant prices charged by the stereotypical "ticket scalper," and specifically pro-

vided only a "reasonable service charge" in addition to the printed ticket price could be imposed.

The Act is a special law because it applies only to a certain segment of the State population, namely entities which sell tickets to sporting and entertainment events at more than the face amount *without* consent of the event sponsor. However, there is a rational basis for not extending the applicability of this law to persons who resell tickets with the permission of event sponsors. As previously noted, the legislature could reasonably have concluded permitting the sale of tickets at more than face value by entities authorized to do so by event sponsors does not result in the same evil or harm to the public as permitting unrestricted sale of tickets at more than face value by "ticket scalpers." Unlike in *Brown* (407 Ill. at 583-84, 95 N.E.2d at 898-99), on which defendant relies, there are in this case some significant distinctions between the businesses affected by the challenged statute and those to which it does not apply.

Citing *Callaghan & Co. v. Smith* (1922), 304 Ill. 532, 136 N.E. 748, *Dunbar v. American Telephone & Telegraph Co.* (1909), 238 Ill. 456, 87 N.E. 521, and *People ex rel. Peabody v. Chicago Gas Trust Co.* (1889), 130 Ill. 268, 22 N.E. 798, defendant contends the Act is special legislation because it confers on event sponsors a monopolistic power over the resale of tickets. Permitting "ticket scalpers" to engage in their trade *without* regulation would not stop the exorbitant charges for goods and services which typically result from monopolistic control of a business. It could have just the opposite effect. Absent regulation, "ticket scalpers" could monopolize desirable tickets and sell them at exorbitant rates. In other words, the Act is intended to prevent the same type of harm which provisions restricting or precluding monopolistic control of various types of businesses are intended to prevent. For this reason, the Act does not run afoul of any restrictions on monopolistic control of businesses inherent in the special legislation clause.

The Act does not violate the provision of the Illinois Constitution dealing with special legislation.

## II. REASONABLE DOUBT

Defendant notes the State presented no evidence he lacked permission of the second cosponsor of the New Kids concert—JAM Productions—to sell tickets to the concert at a price greater than original cost. Defendant contends the State therefore did not establish his guilt beyond a reasonable doubt, in that it failed to show he lacked

consent of all sponsors of the concert to sell the tickets at a price greater than original cost.

It may be assumed that in creating the exemption in section 4 of the Act (Ill. Rev. Stat. 1989, ch. 121½, par. 157.35) for persons who collect service charges on tickets with the consent of an event sponsor, the legislature intended "sponsor" to mean the entity or entities in charge of ticket sales. It is inconceivable a sponsor with no role in the sale or distribution of tickets—here JAM Productions—would consent to a ticket broker imposing a service charge on the resale of tickets, when the sponsor in charge of ticket sales—here the Assembly Hall—was opposed to such an idea. Requiring presentation of evidence of lack of consent by a sponsor such as JAM Productions would be a useless formality. A legislature does not intend its enactments to result in absurd consequences and courts should construe statutes in a manner which may reasonably be presumed to have been within the legislature's contemplation. (*Illinois Chiropractic Society v. Giello* (1960), 18 Ill. 2d 306, 312, 164 N.E.2d 47, 51.) For these reasons, defendant's argument the State did not prove lack of consent beyond a reasonable doubt is without merit.

### III. Motion For Mistrial

During direct examination of Roy Acree, an investigator with the University of Illinois police department, the prosecutor attempted to elicit testimony concerning an ad defendant purportedly placed in a Decatur newspaper offering for sale tickets to the November 8, 1990, New Kids concert. Soon thereafter, the court sustained an objection to questions concerning the ad. Subsequently, the prosecutor, while still questioning Acree, twice attempted to elicit testimony concerning the newspaper ad, and the court again sustained an objection to the questions. Immediately thereafter, the trial judge admonished the prosecutor, outside the presence of the jury, that if there were any further references to the newspaper ad, "that [would be] perilously close to asking me to declare a mistrial in this case." Later, during direct examination of Wayne Hecht, the prosecutor again inquired concerning the newspaper ad, and the court again sustained an objection. At the close of the People's evidence, defendant moved for a mistrial. In denying this motion, the court stated:

> "I will admit that I entertain the same thought which I articulated that the repeated reference or attempted reference to questioning about the newspaper article, despite my ruling on it, could easily be construed as an attempt by the prosecutor to implant the contents of that ad in the jury's mind without it be-

*ing* admissible and despite my evidentiary ruling. That has caused me to come about as close as I have come lately to declaring a mistrial here, but I have confidence that the jury will obey their oath and that they will follow their instructions and that they will base a verdict only on the evidence in the case."

Defendant contends the prosecutor's repeated references to the inadmissible newspaper ad denied him his right to a determination of guilt or innocence by a jury uninfluenced by inadmissible matter. Defendant suggests the prejudice created by the repeated references to the newspaper ad was not cured by the circuit court instructing the jury to disregard the references to the ad.

■ The improper admission of evidence generally requires reversal of a defendant's conviction in cases where the evidence is closely balanced. (*People v. Emerson* (1983), 97 Ill. 2d 487, 501-02, 455 N.E.2d 41, 47; *People v. Graham* (1989), 179 Ill. App. 3d 496, 508-09, 534 N.E.2d 1382, 1390.) In this case, the evidence is not closely balanced. Defendant essentially admitted commission of the charged offense. In closing argument, defendant's counsel suggested defendant should be acquitted (1) because of the lack of evidence defendant did not have permission of the second cosponsor of the New Kids concert—JAM Productions—to sell tickets to the concert and (2) because there was no instruction which stated one could collect a service charge on the sale of tickets "if, but only if" he had the permission of the event sponsor to do so. Other portions of defense counsel's closing argument appear to be a veiled appeal to the jury to use its "nullification power" to find defendant not guilty even though he committed the charged offense.

As previously discussed, it was not necessary for the State to prove defendant lacked permission of JAM Productions to sell tickets to the New Kids concert. Thus, defendant's testimony itself is sufficient to establish he committed the offense. The evidence was not closely balanced, and the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

IV. JURY INSTRUCTIONS

Three of the instructions given the jury read as follows:

"A ticket seller may collect a reasonable service charge provided he has the consent of the sponsor of the amusement performance." People's Instruction No. 8.

"A person commits the offense of sale of ticket for more than the price printed on the ticket when he sells a ticket for any

amusement for a price more than the price printed upon the face of said ticket." People's Instruction No. 9.

"To sustain the charge of sale of ticket for more than the price printed on the ticket, the State must prove the following proposition:

That the defendant sold a ticket for an amusement for a price more than the price printed upon the face of said ticket.

If you find from your consideration of all the evidence that this proposition has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that this proposition has not been proved beyond a reasonable doubt, you should find the defendant not guilty." People's Instruction No. 10.

Defendant contends People's instruction No. 10 failed to inform the jury that lack of consent of the event sponsor is an element of the offense of ticket scalping. Defendant asserts People's instruction No. 8 did not cure this error, because it does not state how it affects and relates to People's instruction No. 10 and does not advise the jurors what they should do if they find defendant had the consent of the event sponsor. Defendant contends, therefore, People's instruction Nos. 8 and 10 conflict and could only have confused the jury.

■ Defendant has waived this argument. At the jury instructions conference, defendant objected to People's instruction No. 8 on the grounds it was misleading, it was surplusage, and it was unnecessary. Defendant suggested People's instruction Nos. 9 and 10 adequately informed the jury of the issues in the case. Also, defendant contended People's instruction No. 8 misstated the law because it suggested (although it did not explicitly state) the sale of tickets at more than the original price is permissible "if, but only if" the event sponsor consents, and the law is to the contrary.

Generally, failure to present to the trial court a ground of objection to a jury instruction results in waiver of the objection. (*People v. Abrams* (1971), 48 Ill. 2d 446, 461, 271 N.E.2d 37, 46.) Under Supreme Court Rule 451(c), however, "substantial defects [in instructions] are not waived by failure to make timely objections thereto if the interests of justice require." (134 Ill. 2d R. 451(c).) Failure to give instructions which adequately define all essential elements of a charged offense is usually plain error, despite the absence of a proper objection at trial. (*People v. Ogunsola* (1981), 87 Ill. 2d 216, 223, 429 N.E.2d 861, 864.) However, where there is no dispute as to the existence of an element of the charged offense, failure to instruct as to

that element may not be plain error. For instance, where there is no dispute as to the value of stolen property, failure to instruct on the value of the stolen property as an element of the offense of theft is not plain error. *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 182-83, 415 N.E.2d 1027, 1030-31.

In this case, the failure to provide more specific instructions as to the lack of consent by the sponsor as an element of the charged offense was not plain error. Defendant acknowledged he lacked the consent of the Assembly Hall—the sponsor in charge of ticket sales—to sell tickets for the New Kids concert at a price greater than their face value. And, as previously indicated, "sponsor," in the context of section 4 of the Act, refers only to the sponsor in charge of ticket sales. Since there was no dispute defendant did not have consent of the Assembly Hall to sell tickets to the New Kids concert at a price greater than their face value, any error in failing to properly instruct the jury as to the element of lack of consent was not plain error requiring reversal of defendant's conviction.

For the reasons stated, we affirm the judgment of the circuit court of Champaign County.

Affirmed.

GREEN, P.J., and McCULLOUGH, J., concur.